[Civ. No. 35011. First Dist., Div. Four. June 18, 1975.]

JOHN R. COOPER, Plaintiff and Appellant, v.
BOARD OF MEDICAL EXAMINERS,
Defendant and Respondent.

(Opinion by Rattigan, Acting P. J., with Christian, J., and Emerson, J.,*
concurring.)

*Retired judge of the superior court sitting under assignment by the Chairman of the
Judicial Council.

■■■■■■■■■■■■■

## COUNSEL

Stewart & Steiner and W. K. Stewart for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, and Louis C. Castro, Deputy Attorney General, for Defendant and Respondent.

## OPINION

**RATTIGAN, Acting P. J.**—John R. Cooper, Ph.D., appeals from a judgment of the superior court denying him mandamus relief upon administrative review of respondent State Board of Medical Examiners' action revoking his license as a licensed psychologist.

On September 21, 1971, the Psychology Examining Committee of respondent Board[1] filed an accusation against appellant's license. Appellant was charged therein with four causes for disciplinary action, based upon allegations that he had illegally prescribed and furnished dangerous drugs and engaged in sexual and other physical intimacies with three female patients.

The Committee conducted a hearing on the accusation on August 7, 8 and 9 and October 18, 1972, and formulated a written decision in which the allegations of three of the causes of action stated in the accusation were found to be true and the penalty proposed as to each ("separately and severally considered") was revocation of appellant's license. Respondent Board adopted the Committee's proposed decision on November 15, 1972.

[1]We hereinafter refer to the Psychology Examining Committee as the "Committee" and to the State Board of Medical Examiners as the "Board" or "respondent Board."

On June 12, 1973, appellant filed a petition for a writ of administrative mandamus in the superior court, seeking review of the Board's decision pursuant to Code of Civil Procedure section 1094.5. After a trial on August 30, 1973,[2] the court signed and filed its findings of fact and conclusions of law and, on December 21, 1973, entered judgment denying the petition for mandamus. This appeal is from the judgment.

The facts shown in the evidence received at the administrative hearing before the Committee are extensive and detailed, and are adequately summarized in the briefs. For both reasons, we need not recite them except as pertinent to our discussion of appellant's contentions. For the reasons respectively stated therein, none of his contentions may be sustained; we affirm the judgment denying relief in mandamus.

(1) *Constitutionality of the Pertinent Statutes*

■ Appellant contends that "respondent Board . . . has proceeded without, and in excess of, jurisdiction." The thrust of this argument is that the statutes and rules under which the Committee functions are constitutionally vague in that they provide no ascertainable standards for enactment of Committee rules, that they fail to specify whether the Committee or respondent Board is the agency charged with enforcement of the Psychology Licensing Law, and that the Administrative Procedure Act is unclear as to whether it applies to both the Committee and the Board. We disagree.

The statutes clearly provide that the provisions of the Psychology Licensing Law (Bus. & Prof. Code, § 2900 et seq.) are to be administered and enforced by the Committee except as to those functions specifically vested in the Board.[3] Section 2965 specifically provides that disciplinary proceedings are to be conducted pursuant to the Administrative Procedure Act (Gov. Code, § 11500 et seq.). As the Committee has the

---

[2] A transcript of the superior court trial has not been included in the record on appeal.

[3] Except where otherwise indicated, all statutory references herein are to the Business and Professions Code. Sections 2920 and 2928 of the Psychology Licensing Law provide:

"2920. The present Psychology Examining Committee of the Board of Medical Examiners of the Department of Consumer Affairs *shall administer the provisions of this chapter.* The committee shall consist of eight members appointed by the Governor, one of whom shall be a public member." (Italics added.)

"2928. The committee shall administer *and enforce the provisions of this chapter except as to those acts and functions specifically vested in the board* [of Medical Examiners] by this chapter and such acts and functions of the board [of Medical Examiners] shall in no way be enlarged by the provisions of the other chapters of this division." (Italics added.)

authority to enforce the Psychology Licensing Law, the fact that section 2960 provides that the Committee "may" take disciplinary action against a licensee does not create uncertainty as to the Committee's *authority* to take such action.

■ Appellant erroneously assumes that, since the Board adopts the decisions of the Committee (§ 2961),[4] the Board is deciding the case in violation of the principle that the "one who decides must hear." This argument is untenable because the Board's function under section 2961 is strictly ministerial: it is required to issue an order imposing discipline in accordance with the Committee's decision. (56 Ops.Cal.Atty.Gen.50.)

■ Appellant next contends that the Legislature failed to establish any standards for the rule-making authority delegated to the Committee. To the contrary, it appears that the power delegated to the Committee by statute, to promulgate rules of professional conduct,[5] is entirely consistent with the principle (reflected in the many licensing acts in the Business and Professions Code) that administrative agencies are better qualified to determine and set the standards of professional conduct in the specific area of their expertise.

In the present case, the rule-making authority of the Committee is sufficiently clear to allow regulation in accordance with the *standards of the profession.* Rule 1397.3 (which appellant was found to have violated) and rule 1397.4 are sufficiently clear so as to be understood by persons of common intelligence.[6]

---

[4]"2961. The board shall deny an application for, or suspend or revoke, or impose probationary conditions upon, a license as ordered by the committee in any decision made after hearing as provided in Section 2965."

[5]Sections 2930 and 2936 provide respectively:

"2930. The committee shall from time to time adopt such rules and regulations as may be necessary to effectuate the provisions of this chapter. In adopting rules and regulations the committee shall comply with the provisions of Chapter 4.5 (commencing with Section 11371) of Part 1 of Division 3 of Title 2 of the Government Code."

"2936. The committee may by rule or regulation adopt, amend, or repeal rules of professional conduct appropriate to the establishment and maintenance of a high standard of integrity and dignity in the profession.

"The adoption, amendment, or repeal of such rules or regulations shall be made in accordance with the provisions of Chapter 4.5 (commencing with Section 11371) of Part 1 of Division 3 of Title 2 of the Government Code.

"Every person who holds a license to practice psychology in this state shall be governed and controlled by the rules of professional conduct adopted by the committee."

[6]Rule 1397.3 of the pertinent Rules of Professional Conduct, found in title 16 of the California Administrative Code (and hereinafter cited by rule and number), provides:

"The psychologist shall not function outside his particular field or fields of competence

Appellant's related argument that the practice of an administrative agency functioning as both prosecutor and judge constitutes a denial of due process may be summarily dismissed. (See, e.g., *Murphy* v. *Board of Medical Examiners* (1946) 75 Cal.App.2d 161, 162-163 [170 P.2d 510].) Similarly, we need not consider his challenge of the validity of that provision of the Administrative Procedure Act which permits the agency to call a respondent to testify.[7] Appellant did not appear at the hearing, nor was he called by the agency.

## (2) *Sufficiency of the Evidence*

Appellant contends that the judgment is unsupported by the findings, and that the findings in turn are not based upon substantial evidence. ▊ In urging this court to review the evidence, he erroneously argues that *this court* is to apply the independent judgment test and that the judgment must be reversed if the trial court's findings are not supported by the weight of the evidence.

As required in administrative mandamus proceedings of this type, the *trial court* exercised its independent judgment and reweighed the evidence. (*Yakov* v. *Board of Medical Examiners* (1968) 68 Cal.2d 67, 69 [64 Cal.Rptr. 785, 435 P.2d 553].) This court's review is limited by the well-settled rule of *Moran* v. *Board of Medical Examiners* (1948) 32 Cal.2d 301, 309 [196 P.2d 20], which requires that the trial court's decision be upheld if it is supported by any credible, competent evidence. (*Yakov* v. *Board of Examiners, supra,* at pp. 71-72; *Packer* v. *Board of Medical Examiners* (1974) 37 Cal.App.3d 63, 69 [112 Cal.Rptr. 76].) Upon application of this test at our level of review, it is apparent that the findings are amply supported by the evidence.

as established by his education, training, and experience."

Since a licensed psychologist is not authorized to prescribe drugs, it is obvious he is functioning outside his field of competence if he prescribes for a patient.

Rule 1397.4 provides: "Interpersonal Relations. The psychologist recognizes that his effectiveness depends upon his ability to maintain sound interpersonal relations, and that temporary or more enduring problems in his own personality may interfere with this ability or distort his appraisals of others. The psychologist shall not knowingly undertake any activity in which his personal problems are likely to result in inferior professional services or harm to a patient or client or, if he is already engaged in such activity when he becomes aware of his personal problems, he shall seek competent professional assistance to determine whether he should continue or terminate his services."

[7]Government Code section 11513, subdivision (b), provides in pertinent part: "If respondent does not testify in his own behalf he may be called and examined as if under cross-examination."

■ Appellant specifically challenges the trial court's findings 3, 4 and 5 for insufficiency of the evidence. Each fact recited in findings 3 and 4 is supported by the direct, unambiguous, unimpeached, uncontradicted testimony of Justyn Kramer. Each fact recited in finding no. 5 is supported by the similar testimony of Francine Pavia.

Section 2960, subdivision (i), provides that a psychologist's license may be revoked if he is "grossly negligent in the practice of his profession." The California Supreme Court in *Van Meter* v. *Bent Construction Co.* (1956) 46 Cal.2d 588, 594 [297 P.2d 644], defined "gross negligence" as "the want of even scant care or an extreme departure from the ordinary standard of conduct."

Dr. Mervin Freedman, whose qualifications were not challenged by appellant, testified that conduct such as that described in findings 3 and 5 constituted an "extreme departure from the standard of practice of psychology."

Section 2904 prohibits psychologists from prescribing drugs. Such conduct is also a violation of rule 1397.3, which prohibits a psychologist from functioning outside his area of expertise. The fact that such actions also constitute violations of several criminal statutes dispels any doubt as to the Committee's power to hold such conduct to be a ground for disciplinary action. It also precludes credibility to appellant's claim that the rules give insufficient notice that such conduct is prohibited. Under the applicable statutes the findings of fact, all of which are supported by substantial evidence, constitute sufficient bases for disciplinary action against appellant.[8]

### (3) *Notice of the Charges*

■ Appellant contends that the accusation was so vague as to give him inadequate notice of the charges against him, precluding him from preparing a defense. Specifically, he objects to the charges that he subjected each of the three named patients to "improper and unethical psychological services *including but not limited to the following . . .*" (Italics added.) Although each charge goes on to allege specific conduct by appellant considered to be in violation of specified statutes, appellant contends that the language, "including but not limited to," fails to comport with due process.

---

[8]Appellant's contention that "deliberate acts cannot constitute gross negligence" is untenable on its face.

This contention is unsound for two reasons. First, the liberal rules of administrative pleading require only that the respondent licensee be informed of the substance of the charge and afforded the basic, appropriate elements of procedural due process. *(Stearns* v. *Fair Employment Practice Com.* (1971) 6 Cal.3d 205, 213 [98 Cal.Rptr. 467, 490 P.2d 1155].) Second, the challenged language was considered at the commencement of the hearing, at which time counsel for the Committee stated to the hearing officer that he would only introduce evidence relevant to those charges specifically pleaded.

■ "A variance between the allegations of a pleading and the proof will not be deemed material unless it has actually misled the adverse party to his prejudice in maintaining his action or defense on the merits, and a variance may be disregarded when the action has been as fully and fairly tried on the merits as though the variance had not existed." *(Hayes* v. *Richfield Oil Corp.* (1952) 38 Cal.2d 375, 382 [240 P.2d 580]; *Savage* v. *Van Marle* (1974) 39 Cal.App.3d 241, 247-248 [114 Cal.Rptr. 51].)[9]

### (4) *Notice of the Administrative Hearing*

■ Appellant contends that he was not given the 10-day notice of hearing required under Government Code section 11509.[10] He does not complain that he had inadequate time in which to prepare a defense; both at the hearing and on the appeal, he has argued only that he did not receive a full 10 days' notice of the advancement of the hearing date from August 8 to August 7, 1972.

This contention is erroneous. The notice at issue was mailed July 28, 1972, advancing the hearing date to August 7, 1972. Under Code of Civil Procedure section 12, "The time in which any act provided by law is to be done is computed by excluding the first day, and including the last . . ." Service by mail is complete at the time of deposit in a post office or mail box (Code Civ. Proc., § 1013), which occurred in the present case on July 28, 1972. Excluding that day, the hearing convened on the 10th day, i.e., August 7, 1972; the notice thereof was thus legally sufficient.[11]

[9]Appellant's related contention, that rule 1397.4 is vague and inconsistent, need not be addressed; the Committee did not find against him with respect to that rule.

[10]Section 11509 provides in pertinent part: "The agency shall deliver or mail a notice of hearing to all parties at least 10 days prior to the hearing."

[11]It bears mentioning that the extra-time provisions of Code of Civil Procedure section 1013 are not applicable to a notice merely stating the time an action is set for trial *(Welden* v. *Davis Auto Exchange* (1957) 153 Cal.App.2d 515, 521-522 [315 P.2d 33]), or

## (5) *The Convening and Conduct of the Administrative Hearing Itself*

■ Appellant asserts that prejudicial error occurred in the convening of the hearing, in its continuance to a later date, and in the refusal of the hearing officer to grant him (appellant) an additional continuance.

The first notice of hearing was mailed to appellant pursuant to Government Code section 11509 on February 25, 1972, setting the hearing for May 15, 16, 17, 18, and 19, 1972. On April 10, 1972, he was notified that the hearing had been recalendared for August 7, 8, 9, 10, and 11, 1972. Subsequently, in accordance with a Committee determination to sit only three days in any one month on disciplinary matters, the Office of Administrative Hearings mailed a notice of hearing to appellant on July 12, 1972, resetting his hearing for August 8, 9, and 10. Thereafter, to facilitate travel by Committee members, the hearing officer advanced the hearing one day to August 7, 8, and 9; notice of this action was mailed to appellant on July 28, 1972. The reasons necessitating changes in the hearing dates involved the simultaneous scheduling of another lengthy disciplinary hearing and the difficulty encountered by members of the Committee in convening for lengthy sessions. These matters were set out at length in respondent's attorney's declaration on the subject, and were explained at the hearing.[12]

The general rule is that administrative agencies should be free to fashion their own rules of procedure and to pursue methods of inquiry consistent with the discharge of their responsibilities. (*Federal Comm'n* v. *Broadcasting Co.* (1940) 309 U.S. 134, 143 [84 L.Ed. 656, 662, 60 S.Ct. 437]; *California Assn. of Nursing Homes etc., Inc.* v. *Williams* (1970) 4 Cal.App.3d 800, 813 [84 Cal.Rptr. 590, 85 Cal.Rptr. 735].) A policy which limits the number of days upon which the Committee will sit in any one month, and providing for continuances when necessary to hear a matter in full, is a reasonable means of accommodating both the interests of the Committee members and the individual parties who may appear before the body.

---

when the right of the party is simply to be present at a proceeding. (*Brown* v. *Rouse* (1897) 115 Cal. 619, 621-622 [47 P. 601].)

[12]As respondent points out, the Committee is constituted of practicing licensed psychologists from various parts of the state, appointed to represent as widely as possible the varied professional interests of psychologists in California. (§ 2922.) The Committee is required by statute to meet only once a year. (§ 2926.) Although it must in fact meet more frequently to hear disciplinary matters, its members receive no compensation except for per diems and expenses. (§ 2935.)

Given these considerations, appellant's contention that setting a three-day hearing precluded him from presenting a defense is plainly untenable. He received all notices required by statute. When the hearing commenced on August 7, 1972, the hearing officer made every effort to accommodate appellant and his counsel. He offered to take appellant's witnesses in any order convenient for appellant, to consider holding evening hearings, or even to reschedule to the last three days of the week to accommodate appellant's expert witnesses. Appellant's counsel refused all offers and the hearing proceeded on the three scheduled days, at the end of which it was continued to October 18, 19, and 20, 1972. Appellant's counsel did not indicate at that time that he would have any difficulty scheduling his witnesses for the October dates.

When the hearing reconvened on October 18, neither appellant nor his counsel was present. On that morning, the hearing officer received a letter from appellant's counsel which was dated October 4, 1972. The letter stated only that objection was made to the matter having been continued to October 18, and that appellant would not appear. The hearing officer then telephoned appellant's counsel to determine his position, and offered to continue the matter. Appellant's attorney failed to indicate his position or to make any specific request regarding the future conduct of the hearing.

Government Code section 11524 provides that a continuance of such hearing may be granted "for good cause shown," but there is no absolute right to a continuance unless the refusal thereof would be an abuse of discretion. (*Savoy Club* v. *Board of Supervisors* (1970) 12 Cal.App.3d 1034, 1038 [91 Cal.Rptr. 198]; *Givens* v. *Dept. Alcoholic Bev. Control* (1959) 176 Cal.App.2d 529, 532 [1 Cal.Rptr. 446].) Under the circumstances appearing here, there was clearly no abuse of discretion in denying appellant a continuance. It appears unlikely that a request for one was made. Instead of indicating that appellant was prejudiced by the manner in which the hearing was convened and conducted, the record tends to indicate that appellant's counsel, in lieu of presenting an affirmative defense, chose to engage in a course of conduct which amounted to his obstructing the hearing at every turn.

Having refused every offer of accommodation by the hearing officer, appellant cannot be heard to complain now that he was precluded from presenting a defense.

### (6) *Matters of Discovery*

Although the provisions of Government Code section 11507.6 "provide the exclusive right to and method of discovery" in pertinent administrative proceedings (*id.*, § 11507.5) and do not permit prehearing depositions, appellant contends that he was entitled to take the deposition of Justyn Kramer in advance of his administrative hearing. Although he concedes that he was not entitled to the deposition under the statutes or case law, he further contends that the applicable statutes are unconstitutional. No persuasive authority has been presented on this point; moreover, appellant had no commonlaw right to prehearing depositions. (See *Shively* v. *Stewart* (1966) 65 Cal.2d 475 [55 Cal.Rptr. 217, 421 P.2d 65, 28 A.L.R.3d 1431]; *Stevenson* v. *State Bd. of Medical Examiners* (1970) 10 Cal.App.3d 433, 440 [88 Cal.Rptr. 815]; *Romero* v. *Hern* (1969) 276 Cal.App.2d 787, 790 [81 Cal.Rptr. 281]; *Everett* v. *Gordon* (1968) 266 Cal.App.2d 667 [72 Cal.Rptr. 379].)

■ Appellant's contention that he was prejudiced by the hearing officer's curtailment of his *voir dire* examination of Justyn Kramer is also without merit. Mrs. Kramer clearly was competent to testify under Evidence Code section 701. Appellant made no offer of proof regarding her competence. His preliminary examination of her dealt with irrelevant matters, and could easily have been characterized as harassment. ■ It is widely recognized that the determination of a witness' competence to testify is within the discretion of the trial judge or other presiding officer, and that questions of credibility are to be resolved by the trier of fact. (Cf. *People* v. *McCaughan* (1957) 49 Cal.2d 409, 420-421 [317 P.2d 974]; *People* v. *Blagg* (1970) 10 Cal.App.3d 1035, 1039 [89 Cal.Rptr. 446]; *People* v. *Bronson* (1968) 263 Cal.App.2d 831 [70 Cal.Rptr. 162], cert. den., 394 U.S. 964 [22 L.Ed.2d 566, 89 S.Ct. 1316].)

### (7) *The Question of Voir Dire Examination of the Committee Members*

■ Prior to the presentation of evidence at the hearing, appellant's counsel requested permission to examine the Committee members, on *voir dire*, for bias. The request having been denied, appellant claims a denial of due process.

Government Code section 11512, subdivision (c), which provides the method for disqualification of a Committee member, calls for the filing of an affidavit alleging with particularity the grounds for disqualification.

The question is then for the Committee to decide. There is no right to examine Committee members, on *voir dire,* as to possible disqualification. (*Feist* v. *Rowe* (1970) 3 Cal.App.3d 404, 414 [83 Cal.Rptr. 465].) It should be noted that there was no indication of bias or prejudice on the part of any Committee member at any time in the course of the hearing, and that appellant has shown no factual basis for his claim of bias as to any member.

### (8) *The Testimony of Margaret Suka*

Mrs. Suka was employed by the State to participate in its investigation of appellant. She posed as his patient, his conduct with her (and others) was the subject of one of the causes for disciplinary action stated in the accusation, she testified at the administrative hearing, and appellant's conduct with her was the factual subject of finding 6 in the Board's decision. His present contentions relative to her testimony and the subject of "entrapment" is not to be considered because, in "determination" No. V of its decision, the Board concluded that there were "no grounds for disciplinary action" "[o]n the facts found in Finding VI"; any conduct involving Mrs. Suka or her testimony is therefore moot.

### (9) *The Kramer Prescriptions*

Appellant contends that certain prescriptions received by the complaining witness Justyn Kramer, from two physicians and ostensibly at his (appellant's) direction, were improperly admitted into evidence because they were not made available to him pursuant to his discovery order under Government Code section 11507.6, and because they were not properly authenticated at the hearing. Neither contention is properly before the court; the record indicates that appellant's attorney withdrew his objection to the admission of the prescriptions, thereby waiving any error now claimed.[13]

### (10) *Competence of the Witness Farrington*

■ Appellant called Edward Farrington, a marriage-family-child counselor, as an expert witness to testify to the standard of practice of psychologists in California and to the procedures employed by appellant in his practice. The Committee and the hearing officer determined that

---

[13] It further appears that the prescriptions were properly authenticated and admitted in evidence. (Gov. Code, § 11513, subd. (c); Evid. Code, §§ 1410, 1413; *Ring* v. *Smith* (1970) 5 Cal.App.3d 197, 204 [85 Cal.Rptr. 227].)

Farrington did not qualify as an expert. Appellant cites this action as arbitrary and as a "premature judgment," by the Committee, that his techniques were unacceptable. Once again, he fails to cite any authority for his contention.

The following was established relative to Farrington's qualifications: He held a degree in education from Jersey City State Teachers College and a master's degree in psychology. He had taught English, reading, and world history in a junior high school for five years and had been chairman of the psychology department at a junior college, for four years, where his major responsibilities were as a counselor and as a teacher of elementary psychology courses. He had been licensed as a marriage counselor in the State of California for three years, and had engaged in private practice as such for approximately two years. At one time he had "looked over" the ethical code for licensed psychologists in California, and was familiar with the techniques practiced at "Esalen Institute." Although he was "sure" that there was "a whole raft" of licensed psychologists working at the "Institute," he could not name any of them.

Evidence Code section 720 defines an expert.[14] "[T]he question whether a witness qualifies as an expert is a matter addressed in the first instance to the sound discretion of the trial court." (*Brown* v. *Colm* (1974) 11 Cal.3d 639, 646-647 [114 Cal.Rptr. 128, 522 P.2d 688].) The court will be deemed to have abused its discretion only if the witness has disclosed sufficient knowledge of the subject to entitle his opinion to go to the trier of fact. *(Ibid.)*

In the present case, the hearing officer announced the ruling that Mr. Farrington could testify as to his knowledge of certain practices and procedures utilized by appellant in therapy, but that he was not qualified to testify as to the standard of practice of licensed psychologists. The ruling was clearly not an abuse of discretion: Mr. Farrington's testimony to his qualifications failed to establish that he had the education, training, experience, or knowledge necessary to testify to the standards to be upheld in the practice of licensed psychologists. (See § 2914.)

---

[14]"720. (a) A person is qualified to testify as an expert if he has special knowledge, skill, experience, training, or education sufficient to qualify him as an expert on the subject to which his testimony relates. Against the objection of a party, such special knowledge, skill, experience, training, or education must be shown before the witness may testify as an expert.

"(b) A witness' special knowledge, skill, experience, training, or education may be shown by any otherwise admissible evidence, including his own testimony."

### (11) *The Committee's "Executive Sessions"*

On at least six occasions during the administrative hearing, and over the objection of appellant's counsel on the first one, the hearing officer and the Committee members (or he and the chairman) convened in "executive sessions" at which the discussions of those involved were not reported.[15] Appellant challenges these events in terms of a denial of due process generally, but specifically cites the provisions of Government Code sections 11120-11131 which require that "actions of state agencies be taken openly and that their deliberation be conducted openly" (*id.,* § 11120) and that their "meetings . . . shall be open and public." (*Id.,* § 11123.)

Among these statutes, however, section 11126 expressly provides that "[n]othing in this article shall be construed to prohibit a state agency from holding an executive session to deliberate on a decision to be reached based upon evidence introduced in a [disciplinary] proceeding required to be conducted pursuant to Chapter 5 (commencing with Section 11500) of Part 1, Division 3, Title 2 of the Government Code or similar provision of law." Appellant's administrative hearing was part of such disciplinary hearing, and it fairly appears that the Committee's objective in conducting each of the "executive sessions" in question was to reach "a decision . . . based upon evidence introduced" (Gov. Code, § 11126) at the hearing.

The various "decisions" reached in executive session were essentially procedural in nature, and some of them pertained to the admission and exclusion of evidence. (These facts alone distinguish *California State Employees' Assn.* v. *State Personnel Bd.* (1973) 31 Cal.App.3d 1009 [108 Cal.Rptr. 57], relied upon by appellant. That decision is also distinguishable because it involved construction of the language of Government Code section 18653, which is not presented here.) Such procedural decisions in this case were nominally the function of the hearing officer, as distinguished from the Committee, by reason of the provisions of Government Code section 11512. subdivision (b).[16] Nothing in that statute, however, precluded the hearing officer from consulting with the

[15]The "executive sessions" involved discussion of appellant's various requests for continuance, the competence of Justyn Kramer as a witness, appellant's request to examine her on *voir dire* in this regard, and the competence of Edward Farrington to testify as an expert witness.

[16]As pertinent, this section provides:

"11512. (a) Every hearing in a contested case shall be presided over by a hearing officer. The agency itself shall determine whether the hearing officer is to hear the case

Committee in executive session concerning the procedural decisions to be reached. We conclude that no violation of the "open and public" requirements expressed in Government Code sections 11120-11131 has been shown.

Moreover, and by way of stating an alternative ground of decision for our rejecting this contention by appellant, we observe that the subject matter of each "executive session," and the decision discussed at it, were fully placed upon the record before each "session," or afterward, or on both occasions in some instances. Appellant has accordingly had the opportunity to examine and challenge each of the decisions made in executive session, and he has in fact done so. (See fn. 15, *ante,* and his various contentions discussed under captions [5], [6] and [10], *supra.*) For this reason, his challenge of the "executive sessions" is to be rejected because he is unable to show that any violation of the principles expressed in Government Code sections 11120-11131 operated to prejudice him in any way, or any reasonable probability that the Committee or the trial court would have reached a decision more favorable to him, procedurally or on the merits of the accusation, if no such violation had occurred. (See Cal. Const., art. VI, § 13; *People* v. *Watson* (1956) 46 Cal.2d 818, 834-838 [299 P.2d 243].)

### (12) *The Penalty Imposed*

 Contending that the revocation of his license is an excessive penalty as a matter of law, appellant asserts that there is no evidence that anyone was harmed by his actions, that "positive benefit" from his "therapy" might have been shown in fact, and that there is "considerable expert opinion that . . . [his] . . . actions are currently accepted and acceptable psychological treatment." Contrary to these claims, the Committee found upon substantial evidence that Mrs. Kramer suffered great emotional distress from appellant's actions as to her, and they amounted to gross negligence at least. There was no evidence that his actions were considered "acceptable psychological treatment" in any sense.[17]

---

alone or whether the agency itself is to hear the case with the hearing officer.

"(b) When the agency itself hears the case the hearing officer shall preside at the hearing, rule on the admission and exclusion of evidence, and advise the agency on matters of law; the agency itself shall exercise all other powers relating to the conduct of the hearing but may delegate any or all of them to the hearing officer . . . ."

[17]Appellant includes in this contention the stated premise that he was somehow denied "the opportunity to tell his side of the allegations." As we have repeatedly pointed out with respect to various other contentions (including but not limited to appellant's notice of the charges against him [see the text under caption (3), *supra*] and the conduct of the administrative hearing [caption (5)]), he was never denied this "opportunity."

 The propriety of a penalty imposed by an administrative agency is a matter within its discretion and, absent a manifest abuse thereof, it will not be disturbed upon review by a trial or appellate court. (*Nightingale* v. *State Personnel Board* (1972) 7 Cal.3d 507, 515 [102 Cal.Rptr. 758, 498 P.2d 1006]; *Cadilla* v. *Board of Medical Examiners* (1972) 26 Cal.App.3d 961, 966-967 [103 Cal.Rptr. 455]; *Marino* v. *City of Los Angeles* (1973) 34 Cal.App.3d 461, 464 [110 Cal.Rptr. 45].) Even if the penalty were to appear to be too harsh according to the court's evaluation,[18] the court is not free to substitute its own discretion for that exercised by the administrative agency. (*Cadilla* v. *Board of Medical Examiners, supra.*)

The test whether the administrative body has properly acted within its discretion, in terms of penalty, is whether "reasonable minds might differ" as to the propriety of the penalty imposed. (*Cadilla* v. *Board of Medical Examiners, supra,* 26 Cal.App.3d 961 at p. 968; *Vielehr* v. *State Personnel Bd.* (1973) 32 Cal.App.3d 187, 196 [107 Cal.Rptr. 852]; *Marino* v. *City of Los Angeles, supra,* 34 Cal.App.3d 461 at p. 464.) In light of the nature of appellant's licensed practice, and the actual or possible harm to his patients as shown here, the Board's revocation of his license may not be deemed an abuse of its discretion: even when the evidence is viewed most favorably to him, all that might be said in his favor is that "reasonable minds might differ" as to the propriety of the revocation penalty imposed.

The judgment denying relief in mandamus is affirmed.

Christian, J., and Emerson, J.,* concurred.

---

[18] It bears mentioning that a psychologist whose license has been revoked may apply for reinstatement one year after the date of revocation. (§ 2962.)

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.