[No. B136762. Second Dist., Div. Four. Apr. 4, 2000.]

DON T. CIMARUSTI et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
DEPARTMENT OF YOUTH AUTHORITY, Real Party in Interest.

**COUNSEL**

Christine Albertine; Rudy E. Jansen; and Benjamin C. Sybesma for Petitioners.

No appearance for Respondent.

Bill Lockyer, Attorney General, James Schiavenza, Jacob A. Appelsmith, and Diana L. Cuomo, Deputy Attorneys General, for Real Party in Interest.

**OPINION**

**VOGEL (C. S.), P. J.—**

### INTRODUCTION

Petitioners, Don T. Cimarusti, Larry A. Coon, Mark A. Saavedra, and John M. Saffold were youth correctional officers employed by the Department of the Youth Authority. Each petitioner received a notice of adverse

action informing him that he was dismissed for engaging in or observing and failing to stop or report the use of unauthorized physical force on six wards in the custody of the Youth Authority and housed in the Nixon Cottage at the Fred C. Nelles Youth Correctional Facility. Petitioners appealed the adverse actions, and the matter is now pending before the State Personnel Board.

Petitioners requested discovery of certain evidence for potential use at the administrative hearing. Government Code section 19574.1 provides in pertinent part, "(a) An employee who has been served with notice of adverse action [or the employee's representative] shall have the right to inspect any documents in the possession of, or under the control of, the appointing power which are relevant to the adverse action taken or which would constitute 'relevant evidence' as defined in Section 210 of the Evidence Code. The employee, or the designated representative, shall also have the right to interview other employees having knowledge of the acts or omissions upon which the adverse action was based. Interviews of other employees and inspection of documents shall be at times and places reasonable for the employee and for the appointing power."

The Youth Authority provided certain discovery, including photographs of the six wards' cells in Nixon Cottage, taped statements of the six wards and members of the staff, letters by the wards describing the incident, photographs depicting the six wards' injuries, and medical reports regarding the evaluation and treatment of those injuries.

Petitioners requested the following items, which the Youth Authority declined to provide on the ground that they included juvenile court records, which can be disclosed only upon an order of the juvenile court pursuant to Welfare and Institutions Code section 827: (1) the ward roster for Nixon Cottage for the period January 1-14, 1999; (2) the "disciplinary files" on the six wards; and (3) the medical files on the six wards. According to the evidence, the Youth Authority does not maintain separate "disciplinary files" on each ward, only master files and field files, which contain virtually all the available information about the wards, including their juvenile court records, and medical files that may contain juvenile court records. The Youth Authority also denied petitioners' request for access to the six wards for interviews by petitioners' counsel.

Following an administrative law judge's denial of their petition for discovery of these items, petitioners moved in superior court to compel discovery pursuant to Government Code section 19574.2. Petitioners contended the requested records were relevant within the meaning of Government Code section 19574.1 and were not juvenile court records as claimed by the Youth Authority, and therefore petitioners had a right to their production. Petitioners also contended they had a due process right of access to the wards to interview them.

The Youth Authority responded that petitioners' broad requests included juvenile court records, which can be disclosed only by order of the juvenile court pursuant to Welfare and Institutions Code section 827, and that even assuming the records might be relevant within the meaning of Government Code section 19574.1, only the juvenile court had authority to decide whether they should be disclosed to petitioners, upon a balancing of petitioners' need for the records against the established policy to preserve the confidentiality of juvenile court proceedings. As to access to the wards for interviews, the Youth Authority contended petitioners had no right, either under Government Code section 19574.1 or as a matter of due process, to require that the wards give interviews to petitioners prior to an administrative hearing before the State Personnel Board.

The trial court essentially agreed with the Youth Authority that the records sought by petitioners are confidential records that only the juvenile court can order disclosed, pursuant to procedures required by Welfare and Institutions Code section 827. It commented, "I don't believe I have the authority . . . . Now where it lies and whether some other court can actually do it, I don't want to speak for another court, but I don't believe it's something I can or should do." By denying the petition in its entirety, the trial court also refused to require the Youth Authority to provide access to the wards for prehearing interviews.

The trial court's order is not appealable; review by extraordinary writ is expressly provided in Government Code section 19574.2, subdivision (h). We issued an order to show cause and stayed the State Personnel Board administrative hearings.

We now conclude the trial court was essentially correct. In their present form, petitioners' broad requests for discovery include juvenile court records that are confidential under Welfare and Institutions Code section 827. In order to rule on petitioners' requests, the judge might need to review the Youth Authority files, which contain juvenile court records. Only the juvenile court or a judge designated by the presiding judge of the juvenile court has such authority. We also conclude petitioners have no right of access to the wards for prehearing interviews. We conclude the trial court properly denied relief to petitioners, although this is without prejudice to further proceedings following a proper request by petitioners to the presiding judge of the juvenile court.

## JUVENILE COURT RECORDS

Juvenile court records may not be disclosed or disseminated except by order of the juvenile court. The juvenile court has *exclusive authority* to

determine the extent to which juvenile court records may be disclosed. (Welf. & Inst. Code, § 827; *T.N.G. v. Superior Court* (1971) 4 Cal.3d 767, 778 [94 Cal.Rptr. 813, 484 P.2d 981]; *In re Keisha T.* (1995) 38 Cal.App.4th 220, 232 [44 Cal.Rptr.2d 822]; see *Parmett v. Superior Court* (1989) 212 Cal.App.3d 1261, 1269 [262 Cal.Rptr. 387].) The fact that Government Code section 19574.1 requires disclosure to disciplined employees of records in the possession of the appointing power is not controlling. To the extent the records are juvenile court records, Welfare and Institutions Code section 827 is deemed the more specific and controlling statute. (*Wescott v. County of Yuba* (1980) 104 Cal.App.3d 103, 106 [163 Cal.Rptr. 385] ["Section 827 of the Welfare and Institutions Code expressly covers the confidentiality of juvenile court records and their release to third parties, and is controlling over the Public Records Act to the extent of any conflict." (Fn. omitted.)].)

At the time of the trial court hearing in this case, Welfare and Institutions Code section 827, subdivision (a) defined the protected documents as "a petition filed in any juvenile court proceeding, reports of the probation officer, and all other documents filed in that case or made available . . . and thereafter retained . . . ."[1] Rule 1423(a) of the California Rules of Court defines the protected "juvenile court records" to include: (1) all documents filed in a juvenile court case; (2) reports to the court by probation officers, social workers, and special advocates; (3) documents made available to probation officers, social workers, and special advocates in preparation of such reports; (4) documents relating to a child concerning whom a petition has been filed, which are maintained in the office files of probation officers, social workers, and special advocates; (5) transcripts, records, or reports relating to matters prepared or released by the court, probation department, or child welfare program; and (6) documents and exhibits admitted into evidence at juvenile court hearings.

In the present case, petitioners have requested the Youth Authority's "disciplinary files" and "medical files" on the six wards, but the evidence shows the Youth Authority does not maintain separate files in that manner. Rather, the Youth Authority maintains a "master file" and a "field file," each of which includes, among many documents, copies of the transmitting juvenile court's records. The Youth Authority's medical file on each ward may contain juvenile court records. The Youth Authority does not here claim that every document placed in a ward's file while the ward is committed to the custody of the Youth Authority is a juvenile court record. But it is clear from the declarations that the Youth Authority files *include* documents

---

[1]The statute was amended in 1999 to refer simply to "a case file" in the operative subdivision (a)(1), but this term was similarly defined in subdivision (e) as "a petition filed in any juvenile court proceeding, reports of the probation officer, and all other documents filed in that case or made available . . . and thereafter retained . . . ."

transmitted from the juvenile court that unquestionably are juvenile court records as defined by Welfare and Institutions Code section 827 and rule 1423.

Only a judge of the juvenile court is authorized to review the Youth Authority's disciplinary and medical files which purportedly contain juvenile court records. Judges of the juvenile court are specifically designated to conduct the business of the juvenile court. Superior court judges not so designated may not hear and rule on juvenile court matters. Welfare and Institutions Code section 246 provides that "In counties having more than one judge of the superior court, the presiding judge of such court . . . shall annually, in the month of January, designate one or more judges of the superior court to hear all cases under this chapter during the ensuing year . . . . [¶] In all counties where more than one judge is designated as a judge of the juvenile court, the presiding judge of the superior court shall also designate one such judge as presiding judge of the juvenile court."

The Los Angeles Superior Court, with its hundreds of judges, of course has a presiding judge of the juvenile court. California Rules of Court, rule 1423(b) provides: "Only those persons specified in [Welfare and Institutions Code] sections 827 and 828 may inspect juvenile court records without authorization from the court. . . . Authorization for any other person to inspect, obtain, or copy juvenile court records must be ordered by the juvenile court presiding judge or a judicial officer designated by the juvenile court presiding judge." We, therefore, assume that the presiding judge of the juvenile court will designate a judge of the respondent court empowered with the authority of the juvenile court to examine and order disclosure of the juvenile court records. To the extent that the Youth Authority records do not include juvenile court records, the designated judge is also authorized to order disclosure of those records in accordance with the provisions of Government Code section 19574.

On remand to the trial court, the petition to compel discovery should be assigned to a designated juvenile court judge who would then examine the confidential files and determine what should be disclosed to petitioners. If the judge concludes certain requested items are not juvenile court records within the meaning of Welfare and Institutions Code section 827 and California Rules of Court, rule 1423, the judge may order disclosure pursuant to Government Code section 19574.2 without regard to the judge's delegated authority from the presiding judge of the juvenile court. For example, the Nixon Cottage roster does not on its face come within the ambit of Welfare and Institutions Code section 827, and is subject to disclosure if it is relevant under the Government Code section 19574.1 standard. On the other hand, if the judge finds that any of the requested items

is itself a juvenile court record within the meaning of Welfare and Institutions Code section 827 and rule 1423, the judge may, in the exercise of delegated discretion under the authority of the juvenile court, order disclosure of juvenile court records. (Welf. & Inst. Code, § 827, former subd. (a), now subd. (a)(1)(K), see fn. 1, *ante*; *T.N.G. v. Superior Court, supra,* 4 Cal.3d 767, 778, 781; *In re Keisha T., supra,* 38 Cal.App.4th 220, 232.) The designated court will exercise its discretion by considering the best interests of the wards and balancing their interests in confidentiality against petitioners' interests and needs for disclosure.[2]

In *Navajo Express v. Superior Court* (1986) 186 Cal.App.3d 981 [231 Cal.Rptr. 165], a civil action for personal injuries by plaintiff seeking damages for brain damage and emotional distress, defendants sought plaintiff's juvenile court records, suggesting the records would show preexisting mental and emotional problems. The appellate court vacated the trial court's order denying the defendant's motion for disclosure of the juvenile court records because the plaintiff's condition was in issue, and the juvenile court should balance plaintiff's interests in confidentiality against defendant's interests. (See also *Parmett v. Superior Court, supra,* 212 Cal.App.3d 1261, 1269 [civil plaintiff sought unsealing of juvenile record of defendant's molestation of plaintiff; juvenile court in its discretion *denied* disclosure; held: civil trial court could not order disclosure, because civil plaintiff's interest was insufficient to *entitle* plaintiff, as a matter of constitutional right, to disclosure]; *In re Keisha T., supra,* 38 Cal.App.4th 220 [balancing dependent wards' interests in confidentiality against interests of the press in exposing welfare agency's failure to protect children against abuse and neglect].) Here, no criminal or civil action is pending, only an administrative hearing, but petitioners do have a property interest in challenging their dismissals from employment.

The *Navajo Express* court suggested guidelines for this process. We do not intend to control the designated court's exercise of its discretion, but make the following observations about the process. Petitioners first need to make clear and specific the type of information they seek from the records to assist the designated court to perform its in camera review of the records. Although the petitioners in *Navajo Express* requested " 'any and all records,' "

---

[2]Authorities reveal that the determination of whether to disclose juvenile court records is discretionary and involves a balancing of competing interests. (*Foster v. Superior Court* (1980) 107 Cal.App.3d 218, 227-230 [165 Cal.Rptr. 701] [criminal defendant charged with indecent exposure to wards in county juvenile hall had an interest in disclosure of portions of their juvenile records, provided his request was made more specific]; *Wescott v. County of Yuba, supra,* 104 Cal.App.3d 103, 108 [mother of child injured in shooting incident had an interest in sheriff's report of other juveniles' involvement, which she intended to use as a plaintiff in civil litigation against parents of the other juveniles].)

their attorney "made clear in the hearing that he wants only records directly relevant to real party's claim that he had never experienced problems similar to those experienced after the accident." (186 Cal.App.3d at p. 986; see, e.g., *Foster v. Superior Court, supra,* 107 Cal.App.3d at p. 230, fn. 2 [in camera screening by juvenile court on the basis of guidelines furnished by counsel about the type of information sought is an appropriate procedure].)

The next step is for the court to determine if the records sought "pertain" to the pending proceeding and would be "otherwise discoverable . . . but for their character as records of the juvenile court." (*Navajo Express v. Superior Court, supra,* 186 Cal.App.3d at p. 986.) As applied to the present case, this means determining whether the records sought are relevant to petitioners' administrative proceeding under the specific standard of discoverability in Government Code section 19574.1: the records must be "relevant to the adverse action taken or which would constitute 'relevant evidence' as defined in Section 210 of the Evidence Code." This requires a stronger showing of relevance by petitioners than the standard of discoverability for civil actions generally, as provided in Code of Civil Procedure section 2017, subdivision (a): "any party may obtain discovery regarding any matter, not privileged, that is relevant to the subject matter involved in the pending action . . . if the matter either is itself admissible in evidence or appears reasonably calculated to lead to the discovery of admissible evidence."

If the court finds the records would otherwise be discoverable under Government Code section 19574.1 but for their character as juvenile court records, the court will next consider whether petitioners' need for discovery outweighs the policy considerations favoring confidentiality of juvenile court records. (*Navajo Express v. Superior Court, supra,* 186 Cal.App.3d at p. 986.)

Finally, if the court determines some juvenile court records shall be disclosed, it will make such orders as necessary to redact the records and to prohibit unnecessary additional dissemination. (*Navajo Express v. Superior Court, supra,* 186 Cal.App.3d at pp. 986-987.)

### ACCESS TO WARDS FOR INTERVIEWS BY PETITIONERS' COUNSEL

█ The identities of the six wards are known to petitioners, and their prior written and recorded statements about the incidents have already been provided to petitioners. The wards are, of course, in the custody of the Youth Authority. Petitioners' counsel desired to interview the wards. The Youth Authority contacted the wards about whether they desired to be interviewed by petitioners' counsel. Five of them signed written forms stating that they

do *not* desire to talk to petitioners' counsel. One was willing, and the Youth Authority offered petitioners' counsel an opportunity to interview him.

Petitioners impliedly concede that the wards are not required to speak to petitioners' counsel if they do not wish to do so. In the trial court and in the petition to this court petitioners contended they "have the right to speak with the wards *in person* and have the wards tell them, or their counsel, that they do not wish to speak with them about this matter." (Italics added.) They · requested the trial court to compel the Youth Authority to give them access to the wards for this purpose. They also argued the Youth Authority had given suggestive information to the wards predisposing them to refuse to talk to petitioners' counsel.

In their reply brief in this court, petitioners assert, without citation to the record, that "[s]ubsequently, CYA did provide a face-to-face opportunity for Petitioners' counsel to request an interview with the wards. The wards refused to speak with Petitioners' counsel." To avoid the implication of mootness, they argue that the Youth Authority's prior suggestiveness and refusal of face-to-face access "interfered" with the asserted "right" to ask the wards in person for an interview.

The record is ambiguous whether the trial court refused to decide this issue because it deferred that decision to the juvenile court, or the court impliedly decided the issue against petitioners on its merits. In either case, no prejudicial error occurred, because petitioners did not have the asserted right to speak personally to the wards to request an interview.

Petitioners had no statutory right to interview the wards, because Government Code section 19574.1 provides the discovery applicable to petitioners' administrative hearing, and it does not include the right to prehearing interviews with witnesses, except other *employees.*

Petitioners contend that as an element of their due process right to a fair hearing, they had a prehearing right to contact the wards personally. They rely on a *criminal* case that held that (except upon a finding of good cause under Pen. Code, § 1054.7) a criminal defendant's attorney or investigator has a right to contact the victim and request an interview, although the victim has no obligation to give one. (*Reid v. Superior Court* (1997) 55 Cal.App.4th 1326, 1332, 1337, fn. 4 [64 Cal.Rptr.2d 714].)

Petitioners' analogy to criminal cases is inapt. Generally, there is no due process right to prehearing discovery in administrative hearing cases, and particularly no constitutional right to take depositions. The scope of discovery in administrative hearings is governed by statute and the agency's

discretion. (*Mohilef v. Janovici* (1996) 51 Cal.App.4th 267, 302 [58 Cal.Rptr.2d 721]; *Kenneally v. Medical Board* (1994) 27 Cal.App.4th 489, 500 [32 Cal.Rptr.2d 504]; *Blinder, Robinson & Co. v. Tom* (1986) 181 Cal.App.3d 283, 289 [226 Cal.Rptr. 339]; *Cooper v. Board of Medical Examiners* (1975) 49 Cal.App.3d 931, 945 [123 Cal.Rptr. 563]; Gov. Code, §§ 11507.5, 11507.6, 11511 [limited discovery under the Administrative Procedure Act].) Petitioners' contention that they were denied due process is unpersuasive. Petitioners have been provided with the wards' prior statements. At the hearing, which will be conducted in accordance with the Administrative Procedure Act (Gov. Code, § 19578, adopting the procedure in Gov. Code, § 11513), petitioners can call and examine witnesses, introduce exhibits, cross-examine opposing witnesses on any relevant matter even if not covered on direct examination, impeach witnesses, and rebut evidence. (Gov. Code, § 11513, subd. (b).) The statutory prehearing discovery and hearing procedures are sufficient to satisfy petitioners' due process rights. (*Blinder, Robinson & Co. v. Tom, supra*, 181 Cal.App.3d 283, 289-290.) Furthermore, petitioners now concede their counsel personally contacted the wards, who have declined to speak with counsel. Whether or not the wards were influenced by the Youth Authority, they have the absolute right to decline an interview. (*Reid v. Superior Court, supra*, 55 Cal.App.4th at p. 1337, fn. 4.)

## DISPOSITION

The order to show cause, having served its purpose, is discharged. The stay of administrative hearings before the State Personnel Board concerning petitioners' appeal of their dismissals of employment, issued on December 16, 1999, shall remain in effect until the remittitur issues and is thereupon vacated. The petition for a writ of mandate is denied. Costs are awarded to real party in interest the Department of the Youth Authority.

Epstein, J., and Curry, J., concurred.

On April 26, 2000, the opinion was modified to read as printed above.