Filed 2/11/16 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>       Plaintiff and Respondent,<br><br>v.<br><br>ANDERSON PURNELL THURSTON,<br><br>       Defendant and Appellant. | A139587<br><br>(Solano County<br>Super. Ct. No. VCR155398)<br><br>**ORDER MODIFYING OPINION AND DENYING REHEARING [NO CHANGE IN JUDGMENT]** |

THE COURT:

It is ordered that the opinion filed herein on January 15, 2016, be modified as follows:

1.     On page 15, add the following paragraph after the first paragraph:

In a petition for rehearing, appellant urges that we cannot rely on the prefatory language of section 1170.12, subdivision (c)(2)(C)(iv) ["conviction, as defined in subdivision (b) of this section"] to determine that section 1170.126, subdivision (e)(3), includes juvenile adjudications, as well as adult convictions [as specified in section 1170.12, subdivision (b)(3)], yet ignore the same prefatory language in finding, as discussed above, that section 1170.126 does not require the disqualifying prior conviction to be pled and proved. Appellant argues we cannot "have it both ways"—if, as we said in connection with the pleading and proof argument, section 1170.126, subdivision (e)(3), incorporates only the offenses specified in section clause (iv) of section 1170.12, subdivision (c)(2)(C), then it must also incorporate only that list of offenses in the context of determining the meaning of "conviction." In short, appellant maintains that logic

1

requires us to interpret section 1170.126, subdivision (e)(3), either as referring solely to the list of "offenses" contained in section 1170.12, subdivision (c)(2)(C)(iv) or as referring to the entirety of the statute, including all the requirements of subdivision (c)(2)(C), as well as clause (iv).

This plea for "logic" is misplaced. Section 1170.126, subdivision (e), incorporates *clause (iv)* of section 1170.12, subdivision (c)(2)(C). When the question is what substantive prior "offenses" render a defendant ineligible for resentencing, section 1170.126, subdivision (e)(3), directs that the relevant "offenses" can be found in the list set forth in the specified "clause (iv)." The pleading and proof requirement does not appear in that clause; it is contained in section 1170.12, subdivision (c)(2)(C). By contrast, when the question is what counts as a "prior conviction for any of the offenses appearing in clause (iv)," the referent is "conviction"—and the answer is provided *in clause (iv) itself,* "conviction, as defined in subdivision (b) of this section." Reading the entirety of subdivision (c)(2)(C) into the question at hand—what prior convictions render a defendant ineligible for *resentencing*—would yield an unworkable result, as those provisions address initial sentencing: In the specified circumstances, "the defendant shall be sentenced pursuant to paragraph (1) of subdivision (c)" unless the prosecution proves a disqualifying prior conviction. This directive clearly does not apply to resentencing under section 1170.126.

Appellant also urges that if section 1170.126, subdivision (e)(3), incorporates the definition of "conviction" in section 1170.12, subdivision (b)(3), it must include the provision a prior juvenile adjudication "shall constitute a prior serious and/or violent felony conviction *for purposes of sentence enhancement*" if the specified conditions are met. Appellant emphasizes that no provision of the Three Strikes law authorizes use of juvenile adjudications for any other purpose.

This view would lead to an illogical result. There is no possibility of sentence enhancement at resentencing under section 1170.126: The originally imposed sentence will either remain intact or be reduced. Appellant's view, therefore, would mean that juvenile adjudications may be used to increase a defendant's sentence at initial sentencing

2

but not to make the same defendant ineligible for a reduced sentence. As we will discuss further, this makes no sense. By referring to clause (iv) of section 1170.12, subdivision (c)(2)(C), which in turn refers to section 1170.12, subdivision (b), for its definition of "conviction," it is apparent that the intention was to make the same "convictions" that preclude an initial two strike sentence also preclude resentencing to a two strike sentence.

2. On page 18, in the second full paragraph, replace the last sentence with the following:

If section 1170.126, subdivision (e)(3), is interpreted as excluding prior juvenile adjudications for purposes of determining eligibility for resentencing, a defendant convicted of a crime that is not a serious or violent felony who, if first sentenced under the Reform Act would be treated as a third striker due to a prior juvenile adjudication, would nevertheless be able to seek to have his or her previously imposed three strikes sentence reduced to a second strike sentence.

There is no change in the judgment.

Appellant's petition for rehearing is denied.

Dated: _____          _____

Kline, P.J.

3

| | |
|---|---|
| Trial Court: | Solano County Superior Court |
| Trial Judge: | Hon. Peter B. Foor |
| Attorney for Defendant and Appellant: | William Richard Such<br>Under Appointment by the<br>Court of Appeal |
| Attorneys for Plaintiff and Respondent: | Kamala D. Harris<br>Attorney General of California<br><br>Gerald A. Engler<br>Chief Assistant Attorney General<br><br>Rene A. Chacon<br>Supervising Deputy Attorney General<br><br>Julia Y. Je<br>Deputy Attorney General |

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ANDERSON PURNELL THURSTON,<br><br>    Defendant and Appellant. | A139587<br><br>(Solano County<br>Super. Ct. No. VCR155398) |

Anderson Purnell Thurston, currently serving a prison term of 27 years to life imposed in 2002 under the Three Strikes law, appeals from the denial of his request for resentencing under the Three Strikes Reform Act. He contends the trial court erred in finding he was not eligible for resentencing due to a 1975 juvenile adjudication of rape. Appellant maintains that the juvenile adjudication could not be used to disqualify him from resentencing because it was not pleaded and proved in the underlying third strike case; a prior juvenile conviction is not a "prior conviction" for purposes of determining eligibility for resentencing; the record of the juvenile adjudication was not properly before the court; the trial court's statement that it would not resentence appellant even if he was eligible for resentencing should be disregarded; and the evidence did not support the trial court's statement that, if appellant was eligible, it would find that resentencing would pose an unreasonable risk to public safety. We affirm.

## STATEMENT OF THE CASE AND FACTS

In 2002, after a jury trial, appellant was found guilty of felony driving in disregard for safety of persons or property while fleeing from a pursuing police officer. (Veh. Code, § 2800.2, subd. (a).) Appellant was found to have suffered three prior strike

convictions (Pen. Code, §§ 1170.12, subds. (a)-(d); 667, subds. (b)-(i)),[1] for robberies in 1990 and 1984, and two prison priors (§ 667.5, subd. (b)), for the 1990 robbery and a 1999 violation of Vehicle Code section 2800.2. He was sentenced to a prison term of 25 years to life for the current conviction plus two consecutive one-year terms for the two prison priors.

The facts underlying appellant's 2002 conviction were described in detail in our opinion affirming that conviction. (*People v. Thurston* (Jan. 19, 2005, A101620, A106524) [2005 WL 102931].)[2] In brief, when a Vallejo police officer attempted to stop the vehicle appellant was driving, appellant accelerated and drove for about 1.2 or 1.3 miles with the officer in pursuit, failing to stop at a stop signs, driving at speeds of up to 60 miles per hour in a 30 mile per hour zone and in the wrong direction on one-way streets. (*Id.* at pp. *3-4.) The officer testified that there was no traffic on the one-way streets. (*Id.* at p. *3.) The chase ended when the car appellant was driving jumped onto the curb over a planter box and stopped, still in gear, and appellant ran from car; appellant was found in a yard, lying face down by the fence, panting and sweating profusely. (*Ibid.*)

---

[1] All further unspecified statutory references are to the Penal Code.

[2] As described in our prior opinion, the case that led to the Vehicle Code section 2800.1 conviction resulting in the three strikes sentence was originally filed as if appellant had only one prior strike conviction. (*People v. Thurston, supra,* 2005 WL 102931, *10, fn. 4.) Appellant initially pled no contest to the charges and admitted the special allegations pursuant to a plea bargain directly negotiated with the court, under which he would have entered Delancey Street or another similar program and, if he failed in the program, would have gone to prison for a maximum of eight years. (*Id.* at p. *1.) After reading in the presentence report that appellant had not been cooperative with the probation department regarding releases of information, the trial court denied appellant's request for probation and allowed appellant to withdraw his pleas. (*Id.* at p. *2.) At the conclusion of the preliminary hearing, appellant moved to reduce the Vehicle Code section 2800.1 offense to a misdemeanor and the prosecutor argued that the case "could easily be filed as a third strike." (*Id.* at p. *9.) Apparently the criminal history reviewed by the prosecutor who had filed the complaint was incomplete; the case was taken over by a different prosecutor who obtained a complete rap sheet, after which the case was filed as a third strike case. (*Id.* at p. *10, fn. 4.)

In November 2012, after passage of the Three Strikes Reform Act (Proposition 36), appellant, in propria persona, filed a petition for resentencing.  The Solano County Public Defender was appointed to represent appellant, and a new petition for resentencing was filed on January 16, 2013.  Opposing the petition, the prosecutor noted that appellant might not be eligible for resentencing due to a 1975 juvenile adjudication for rape, noting that it was unclear whether the facts behind the adjudication were in the record and the court would have to determine from the juvenile record whether the rape was forcible.

On March 18, the court heard testimony from five witnesses, relatives, and a friend of appellant, who believed appellant had changed and would not pose any danger to the community if released.  Defense counsel noted that at the time of appellant's 2002 trial, acting without counsel, appellant had turned down two potential dispositions that would have called for sentences of four years or eight years.

The court had reviewed appellant's juvenile court file and, after directing defense counsel to review it, indicated that it was inclined toward finding appellant ineligible due to the juvenile adjudication.  The matter was continued for counsel to provide the court with authority on the issue of whether appellant's juvenile adjudication precluded resentencing.

On April 22, appellant presented testimony from three present or former prison employees concerning his rehabilitative efforts and the matter was again continued.

On May 13, the prosecutor served a formal notice of request for disclosure of appellant's juvenile court file; the next day, the prosecutor filed supplemental points and authorities arguing that appellant was not eligible for resentencing due to the 1975 juvenile adjudication of rape and attaching copies of a 1975 order of commitment to the then-named California Youth Authority (now the Division of Juvenile Justice) (DJJ) for violation of section 261, the juvenile court petition alleging forcible rape, and minute orders sustaining the petition and committing appellant to the DJJ.  Appellant and defense counsel filed separate objections to release of the juvenile records.

On June 10, the parties disputed whether the trial court could order release of the juvenile records, appellant insisting that the determination could only be made by a

3

*juvenile court* judge. The court held that it had jurisdiction to make the order, ordered that the request for disclosure be filed, and ordered the relevant portions of the juvenile court file released to the parties for use in this proceeding. The parties then presented arguments on whether the juvenile adjudication rendered appellant ineligible for resentencing and whether he would present a danger to the community if released, and appellant addressed the court.

On June 17, noting that it was an issue of first impression, the court held that a juvenile adjudication could disqualify an individual seeking resentencing and that it was clear the adjudication was for a sexually violent act within the meaning of Welfare and Institutions Code section 6600, subdivision (b). The court additionally held that appellant continued to pose an unreasonable risk of danger to the community, explaining that it was considering this issue in case it was determined to have erred in finding the juvenile adjudication rendered appellant ineligible for resentencing.

On July 11, defense counsel filed a motion to recall and resentence appellant pursuant to section 1170, subdivision (d), attaching a letter appellant wrote to the court dated the day after the June 17 hearing, and a document entitled "Refutation, Clarification & Correction" in which appellant addressed various factual errors he believed the court had made in its reasons for viewing him as continuing to pose an unreasonable risk of danger, as well as ways in which appellant had expressed remorse and sympathy for victims of his crimes. At a hearing on August 9, the court treated the motion as a motion for reconsideration of the denial of appellant's petition for resentencing.

Appellant filed a notice of appeal from the denial of the petition for resentencing on August 9, 2013.

## DISCUSSION

Prior to the adoption of Proposition 36, the Three Strikes Reform Act of 2012 (Reform Act), a defendant who had previously been convicted of two or more serious or violent felonies was subject to an indeterminate sentence of 25 years to life upon conviction of any new felony. (*People v. Chubbuck* (2014) 231 Cal.App.4th 737, 740

4

(*Chubbuck*); *People v. White* (2014) 223 Cal.App.4th 512, 517 (*White*); *People v. Kaulick* (2013) 215 Cal.App.4th 1279, 1285 (*Kaulick*).) "The Reform Act prospectively changed the Three Strikes law by reserving indeterminate life sentences for cases where the new offense is also a *serious or violent felony*, unless the prosecution pleads and proves an enumerated disqualifying factor. In all other cases, a recidivist defendant will be sentenced as a second strike offender, rather than a third strike offender." (*Chubbuck,* at pp. 740-741; *Kaulick,* at p. 1286; *People v. Yearwood* (2013) 213 Cal.App.4th 161, 167-168 (*Yearwood*).)

"The Reform Act also created a ' "post-conviction release proceeding" ' whereby a Three Strikes prisoner who is serving an 'indeterminate life sentence' for a crime that was not a serious or violent felony—and who is not otherwise disqualified—may have his or her sentence recalled and be resentenced as a second strike offender, unless the court 'determines that resentencing . . . would pose an unreasonable risk of danger to public safety.' (§ 1170.126, subds. (a), (f), (m); see *Yearwood, supra,* 213 Cal.App.4th at p. 168.)" (*Chubbuck, supra,* 231 Cal.App.4th at p. 741; *White, supra,* 223 Cal.App.4th at p. 517.)

Under section 1170.126, subdivision (e)(3), an inmate is *not* eligible for resentencing if he or she has a prior conviction for any offense appearing in section 667, subdivision (e)(2)(C)(iv), or section 1170.12, subdivision (c)(2)(C)(iv). As relevant here, the referenced offenses include a " 'sexually violent offense' as defined by subdivision (b) of Section 6600 of the Welfare and Institutions Code." (§ 1170.12, subdivision (c)(2)(C)(iv)(I); § 667, subdivision (e)(2)(C)(iv)(I).) Welfare and Institutions Code section 6600, subdivision (b), defines " '[s]exually violent offense' " as meaning "the following acts when committed by force, violence, duress, menace, fear of immediate and unlawful bodily injury on the victim or another person, or threatening to retaliate in the future against the victim or any other person . . .: a felony violation of Section 261 . . . ."

Appellant contends his 1975 juvenile adjudication could not be used to deny his eligibility for resentencing for several reasons: It was not pleaded and proved in the

5

underlying third strike case; it was a juvenile adjudication and not a "conviction"; and the record of the juvenile adjudication was not properly before the trial court

## I.

Appellant contends that a prior conviction may be used to disqualify a defendant from resentencing under section 1170.126 only if it was pled and proved in the proceeding that resulted in the current sentence. Because the juvenile adjudication for rape was not pled and proven in the 2002 trial that led to appellant's three strikes sentence, appellant maintains the juvenile adjudication cannot now serve to preclude resentencing.

As amended by the Reform Act, for initial sentencing on a current offense, "there is a clear statutory pleading and proof requirement with respect to factors that disqualify a defendant with two or more prior strike convictions from sentencing as a second strike offender." (*People v. Osuna* (2014) 225 Cal.App.4th 1020, 1033 (*Osuna*).) The Three Strikes law provides: "If a defendant has two or more prior serious and/or violent felony convictions as defined in subdivision (c) of Section 667.5 or subdivision (c) of Section 1192.7 that have been *pled and proved*, and the current offense is not a felony described in [the Three Strikes law], the defendant shall be sentenced [as if a second strike offender] unless the prosecution *pleads and proves* any of the following: [¶] (iv) The defendant suffered a prior conviction [as defined in the Three Strikes law] for any of the following serious and/or violent felonies: [¶] (I) A 'sexually violent offense' as defined in subdivision (b) of Section 6600 of the Welfare and Institutions Code." (§§ 1170.12, subd. (c)(2)(C)(iv)(I); 667, subd. (e)(2)(C)(iv)(I), italics added.)

"Fairly read, however, section 1170.126 does not impose the same requirements in connection with the procedure for determining whether an inmate already sentenced as a third strike offender is eligible for resentencing as a second strike offender." (*Osuna, supra,* 225 Cal.App.4th at p. 1033.) Section 1170.126, subdivision (e), provides: "An inmate is eligible for resentencing if: . . . [¶] (3) The inmate has no prior convictions for any of the offenses appearing in clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667 or clause (iv) of subparagraph (C) of paragraph (2) of

6

subdivision (c) of Section 1170.12." Clause (iv) of each of the referenced statutes, as indicated above, provides, "The defendant suffered a prior conviction, as defined in [the Three Strikes law], for any of the following serious and/or violent felonies: [¶] (I) A 'sexually violent offense' as defined in subdivision (b) of Section 6600 of the Welfare and Institutions Code." (§§ 1170.12, subd. (c)(2)(C)(iv), 667, subd. (e)(2)(C)(iv).) Section 1170.126, subdivision (e)(3), thus cross-references only "the offenses appearing in" the specified clauses and "*not* the text preceding them that specifies the procedural prerequisite of pleading and proof." (*People v. Elder* (2014) 227 Cal.App.4th 1308, 1315; *White, supra,* 223 Cal.App.4th at pp. 526-527.)

As appellant recognizes, a number of Court of Appeal cases have held that there is no pleading and proof requirement for factors that disqualify a defendant from resentencing under the Reform Act. (*Chubbuck, supra,* 231 Cal.App.4th at p. 748; *People v. Brimmer* (2014) 230 Cal.App.4th 782, 805; *People v. Elder, supra,* 227 Cal.App.4th at pp. 1314-1315; *Osuna, supra,* 225 Cal.App.4th at p. 1038; *People v. Blakely* (2014) 225 Cal.App.4th 1042, 1058 (*Blakely*); *White, supra,* 223 Cal.App.4th at pp. 526-527.) The "pleading and proof requirement plainly is a part of only the *prospective* part of the Reform Act, which governs the *sentencing* of a *defendant* with 'two or more prior serious and/or violent felony convictions' who has suffered a third felony conviction; it is *not* a part of section 1170.126, the *retrospective* part of the Reform Act that governs a petition for *resentencing* brought by an *inmate* already serving a life sentence under the Three Strikes law." (*White,* at p. 527; *Brimmer,* at p. 802.) "No pleading and proof language appears in the part of the [Reform] Act addressing relief to persons previously sentenced under the Three Strikes law. (§ 1170.126, subd. (e).) The *retrospective* relief under section 1170.126 is conditioned upon an *eligible* commitment offense, which '*the* [*trial*] *court shall determine*' on 'receiving a petition for recall of sentence under this section.' (§ 1170.126, subd. (f), italics added.)" (*Brimmer,* at pp. 802-803.)

Appellant notes the requirement of section 1170.12, subdivision (d)(1), that "[t]he prosecuting attorney shall plead and prove each prior serious and/or violent felony

7

conviction except as provided in paragraph (2)."[3] Paragraph (2) permits the prosecuting attorney to "move to dismiss or strike a prior serious and/or violent felony conviction allegation in the furtherance of justice pursuant to Section 1385, or if there is insufficient evidence to prove the prior serious and/or violent conviction." Based on these provisions, appellant asserts that "with those exceptions, all such convictions *must* be pleaded." Section 1170.12, subdivision (d)(1), however, applies to original sentencing. It does not alter the fact that no pleading and proof requirements appear in the provisions of section 1170.126 concerning inmates' eligibility for resentencing.

Appellant also argues that it would violate equal protection principles if the same pleading requirements applicable at original sentencing did not apply at "re-sentencing." First, the question here is not whether there is a pleading requirement with respect to resentencing; the question is whether there is a pleading requirement with respect to the determination of eligibility for resentencing. If eligible, unless the trial court finds an unreasonable risk of danger to public safety, the inmate "shall be resentenced" pursuant to section 1170.12, subdivision (c)(1), and section 667, subdivision (e)(1)—the provisions governing original sentencing, which include the pleading and proof requirement.

Second, to the extent appellant means to be arguing that equal protection requires the same pleading requirement apply to the determination of eligibility, he has made no effort to establish that, as an inmate requesting resentencing under section 1170.126, he is similarly situated to a defendant being sentenced for the first time under sections 1170.12 or 667. He is not. (*People v. Losa* (2014) 232 Cal.App.4th 789, 793.) In rejecting an equal protection challenge to the provision of section 1170.126 precluding resentencing upon a trial court's determination of dangerousness, the *Losa* court explained, "Defendant is not merely entering the prison system; rather, he has been confined there

---

[3] The analogous provision of the legislative version of the Three Strikes law is section 667, subdivision (f)(1). For simplicity, this opinion will in general refer to the initiative version of the law without specifying the analogous sections of the legislative version in every instance.

8

for a substantial period of time. . . . '[Defendant] *was properly sentenced* to prison for an indefinite term because he was *properly convicted* (beyond a reasonable doubt, by a unanimous jury) of a third felony after he had committed two prior serious or violent felonies. It was his third felony conviction which, pursuant to the law in effect at the time, subjected him to an indeterminate sentence. Now, due to the adoption of the Act, [defendant] may be entitled to a downward modification of this indeterminate term to a determinate second strike sentence. That he may be denied such downward modification due to a finding of dangerousness based on a preponderance of the evidence does not mean that he would be subjected to indefinite confinement based on this finding. He is subject to the indeterminate term due to his original third strike sentence; the dangerousness finding would simply deny him a downward modification. This process does not deny [defendant] his constitutional right to equal protection of the law.' " (*Losa,* at p. 793, quoting *Kaulick, supra,* 215 Cal.App.4th at p. 1306.)

Similarly, here, having been properly sentenced under the law in effect at the time, appellant is not in the same position as a defendant being sentenced for the first time. "A finding an inmate is not eligible for resentencing under section 1170.126 does not increase or aggravate that individual's sentence; rather, it leaves him or her subject to the sentence originally imposed." (*Osuna, supra,* 225 Cal.App.4th at p. 1040.) " 'The retrospective part of the Act is not constitutionally required, but an act of lenity on the part of the electorate.' " (*Ibid.*, quoting *Kaulick, supra,* 215 Cal.App.4th at pp. 1303-1305.) As we have said, once found entitled to resentencing, an inmate's actual resentencing will be pursuant to the provisions governing first-time sentencing of a second strike offender.

Appellant points to section 1170.126, subdivision (d), which provides, "The petition for a recall of sentence described in subdivision (b) shall specify all of the currently charged felonies, which resulted in the sentence under paragraph (2) of subdivision (e) of Section 667 or paragraph (2) of subdivision (c) of Section 1170.12, or both, and shall also specify all of the prior convictions alleged and proved under subdivision (d) of Section 667 and subdivision (b) of Section 1170.12." Appellant takes

9

this provision to mean that any prior conviction that was not alleged and proved in the original proceeding is "irrelevant." We are not convinced. The requirement that the court asked to resentence an inmate be informed of all the prior convictions that were established at the original sentencing sets a minimum standard ensuring the court has at least the same information as the original sentencing court. It does not necessarily preclude introduction of additional evidence relevant to the eligibility determination. That an inmate's entitlement to resentencing under section 1170.126 was expected to depend on evidence not necessarily presented at his or her original sentencing is evident in the requirement that the court determine whether a new sentence would result in an unreasonable risk of danger to public safety, a requirement not at issue in first-time sentencing under the Three Strikes law.

Further pressing the argument that section 1170.126, subdivision (e)(3), incorporates the pleading and proof requirements of sections 1170.12, subdivision (c)(2)(C)(iv), and 667, subdivision (e)(2)(C)(iv), appellant argues that if it was intended that prisoners be disqualified from resentencing regardless of whether the disqualifying prior convictions had been pleaded and proved, the Reform Act could have "skirted" the pleading and proof requirements by referring "directly to the specifications of offenses in Penal Code sections 667.5, subdivision (c), and 1192.7 and Welfare and Institutions Code section 6600." But the list of offenses in the clauses referenced in section 1170.126, subdivision (e)(3), is much shorter and more specific than the list enumerated as serious felonies in section 1192.7, subdivision (c), and does not even include all the violent felonies listed in section 667.5, subdivision (c).[4] It appears that the Reform Act carefully

---

[4] To take one example, section 1192.7, subdivision (c), specifies a number of assault offenses (§ 1192.7, subds. (c)(10)–(c)(13), (c)(29), (c)(31), (c)(32). Section 667.5, subdivision (c), lists a more limited number, including assault with intent to commit mayhem or specified sexual offenses, and certain assaults subject to firearm enhancements. (§ 667.5, subds. (c)(8), (c)(15), (c)(22).) The only type of assault included in the list of offenses referenced in section 1170.126, subdivision (e)(3), is assault with a machine gun on a peace officer or firefighter as defined in section 245, subdivision (d)(3). (§§ 1170.12, subd. (c)(2)(C)(iv)(VI), 667, subd. (e)(2)(C)(iv)(VI).)

identified the prior offenses that would preclude an offender whose current offense is not a serious or violent felony from being treated as a second rather than a third strike offender (§§ 1170.12, subd. (c)(2)(C)(iv), § 667, subd. (e)(2)(C)(iv)), then referred to this select list of offenses in defining the offenses that would render a previously sentenced third strike offender ineligible for resentencing.  (§ 1170.126, subd. (e)(3).)

Finally, appellant offers *People v. Lo Cicero* (1969) 71 Cal.2d 1186, 1192-1193 (*Lo Cicero*), as establishing a constitutional requirement for pleading and proof of a prior conviction used to deny resentencing under section 1170.126, subdivision (e)(3). *Lo Cicero* implied a pleading and proof requirement into a statute that prohibited probation for certain defendants with specified prior convictions.  "The statute did not expressly require the prior conviction establishing the defendant's ineligibility be pleaded and proved, but we recognized an implied pleading and proof requirement under *People*

---

The offenses listed in sections 1170.12, subdivision (c)(2)(C)(iv) and 667, subdivision (e)(2)(C)(iv), are as follows:

"(I)  A 'sexually violent offense' as defined by subdivision (b) of Section 6600 of the Welfare and Institutions Code.

"(II)  Oral copulation with a child who is under 14 years of age, and who is more than 10 years younger than he or she as defined by Section 288a, sodomy with another person who is under 14 years of age and more than 10 years younger than he or she as defined by Section 286 or sexual penetration with another person who is under 14 years of age, and who is more than 10 years younger than he or she, as defined by Section 289.

"(III)  A lewd or lascivious act involving a child under 14 years of age, in violation of Section 288.

"(IV)  Any homicide offense, including any attempted homicide offense, defined in Sections 187 to 191.5, inclusive.

"(V)  Solicitation to commit murder as defined in Section 653f.

"(VI)  Assault with a machine gun on a peace officer or firefighter, as defined in paragraph (3) of subdivision (d) of Section 245.

"(VII)  Possession of a weapon of mass destruction, as defined in paragraph (1) of subdivision (a) of Section 11418.

"(VIII)  Any serious and/or violent felony offense punishable in California by life imprisonment or death."

*v. Ford* (1964) 60 Cal.2d 772, in which 'we held that "before a defendant can properly be sentenced to suffer the increased penalties flowing from . . . [a] finding . . . [of a prior conviction] the fact of the prior conviction . . . must be charged in the accusatory pleading, and if the defendant pleads not guilty thereto the charge must be proved and the truth of the allegation determined by the jury, or by the court if a jury is waived." ' (*Lo Cicero*, . . . at pp. 1192-1193, quoting [*Ford*], at p. 794.)  We concluded that '[t]he denial of opportunity for probation involved here is equivalent to an increase in penalty, and the principle declared in *Ford* should apply.' (*Lo Cicero*, . . . at p. 1193; see *People v. Ibarra* (1963) 60 Cal.2d 460, 467-468; *People v. Huffman* (1977) 71 Cal.App.3d 63, 82.)" (*In re Varnell* (2003) 30 Cal.4th 1132, 1140.)

*Blakely, supra,* 225 Cal.App.4th 1042, found this reasoning inapplicable to the determination of eligibility for resentencing under section 1170.126.  The issue in *Blakely* was whether the inmate was ineligible for resentencing because he was armed with a firearm during the commission of the offense for which his three strikes sentence was imposed. (*Blakely,* at p. 1051; § 1170.126, subd. (e)(2).)  The current conviction was for possession of a firearm by a felon, which did not necessarily establish that the defendant was *armed*, and *Blakely* upheld the trial court's decision to consider "the overall facts and circumstances" of the case to determine whether the defendant was in fact armed. (*Blakely,* at p. 1058.)

The *Blakely* court concluded that the factor disqualifying the defendant from resentencing "need not be pled and proved in the sense of being specifically alleged in an accusatory pleading and expressly either found by the trier of fact at trial of the current offense or admitted by the defendant." (*Blakely, supra,* 225 Cal.App.4th at p. 1058.)  The court cited *Lo Cicero* among authorities supporting the point that "[i]f we were concerned with the propriety of the *imposition of additional or aggravated punishment* based on the nature of defendant's current conviction," the argument that pleading and proof was required "would have merit." (*Id.* at p. 1062.)  "In the present case, however, we are not concerned with the initial imposition of sentence.  As we have explained, defendant has already had an indeterminate term of 25 years to life imposed. . . .  Cases limiting

12

consideration to the elements of the offense and evidence presented to the trier of fact do not constrain a court where, as here, the issue is eligibility for a lesser sentence than the one already properly imposed. Like facts invoked to limit the ability to earn conduct credits, facts invoked to render an inmate ineligible for downward resentencing do not increase the penalty for a crime beyond the statutory maximum, and so need not be pled or proved. (See *People v. Lara* (2012) 54 Cal.4th 896, 901, 905–906.)" (*Id.* at p. 1063, fn. omitted.)

The same is true here. The prior juvenile adjudication at issue in this case was not used to increase the penalty to which appellant was exposed, only to determine whether he was eligible for a possible reduction in a previously imposed sentence.

## II.

Appellant next argues that because section 1170.126 expressly refers only to "convictions" and not "juvenile adjudications," the latter cannot serve to disqualify him from resentencing. The relevant portion of section 1170.126 reads: "(e) An inmate is eligible for resentencing if: [¶] (3) The inmate has no prior *convictions* for any of the offenses appearing in clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667 or clause (iv) of subparagraph (C) of paragraph (2) of subdivision (c) of Section 1170.12." (Italics added.)

In general, juvenile adjudications are not convictions. (Welf. & Inst. Code, § 203 ["An order adjudging a minor to be a ward of the juvenile court shall not be deemed a conviction of a crime for any purpose, nor shall a proceeding in the juvenile court be deemed a criminal proceeding"]; *In re W.B.* (2012) 55 Cal.4th 30, 43.) Appellant contrasts section 1170.126 with section 1170.12, subdivision (b)(3), which provides that "*for the purposes of this section*," a "prior serious juvenile adjudication shall constitute a prior serious and/or violent felony conviction *for the purposes of sentence enhancement*" (italics added) if certain conditions are met.[5] He invokes the maxim of statutory

---

[5] The conditions are as follows: "(A) The juvenile was sixteen years of age or older at the time he or she committed the prior offense, and

construction *inclusio unius est exclusio alterius,* " ' "where exceptions to a general rule are specified by statute, other exceptions are not to be implied or presumed." [Citations.]' (*Mutual Life Ins. Co. v. City of Los Angeles* (1990) 50 Cal.3d 402, 410.)" (*People v. Quiroz* (2011) 199 Cal.App.4th 1123, 1130.) In appellant's view, the italicized language above limits the reach of section 1170.12, subdivision (b)(3), defining "conviction" as including juvenile adjudications, to sentence enhancement at original sentencing (the subject of section 1170.12) and, therefore, juvenile adjudications cannot be considered "convictions" for purposes of resentencing under section 1170.126. For all these reasons, he urges, the fact that section 1170.126, subdivision (e)(3), does not expressly refer to juvenile adjudications must be taken to mean that only prior adult convictions for the specified offenses can render an inmate ineligible for resentencing.

Contrary to appellant's interpretation, section 1170.126, subdivision (e)(3), has been read as incorporating by reference the provision of section 1170.12, subdivision (b)(3), equating juvenile adjudications with convictions for purposes of the Three Strikes law. (Couzens et al., Sentencing California Crimes (July 2015) § 20:36 [addressing the analogous provisions of section 667].) Section 1170.126, subdivision (e)(3), excludes defendants with a prior conviction "for any of the offenses appearing in clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667 or clause (iv) of

---

"(B) The prior offense is

"(i) listed in subdivision (b) of Section 707 of the Welfare and Institutions Code, or

"(ii) listed in this subdivision as a serious and/or violent felony, and

"(C) The juvenile was found to be a fit and proper subject to be dealt with under the juvenile court law, and

"(D) The juvenile was adjudged a ward of the juvenile court within the meaning of Section 602 of the Welfare and Institutions Code because the person committed an offense listed in subdivision (b) of Section 707 of the Welfare and Institutions Code." (§ 1170.12, subd. (b)(3).)

Section 667, subdivision (d)(3), sets forth the same provisions for treating juvenile adjudications as convictions "for purposes of sentence enhancement" under "subdivisions (b) to (i).

14

subparagraph (C) of paragraph (2) of subdivision (c) of Section 1170.12." Section 1170.12, subdivision (c)(2)(C)(iv), provides, "The defendant suffered a prior conviction, as defined in subdivision (b) of this section, for any of the following serious and/or violent felonies . . . ." Subdivision (b)(3) of section 1170.12, as we have said, defines "prior serious and/or violent conviction of a felony" as including "[a] prior juvenile adjudication" in the specified circumstances. The authors conclude, "Since the definition of 'conviction of a serious and/or violent felony' contained in section 667(d) [1170.12, subd. (b)] is incorporated by reference in section 667(e)(2)(C)(iv) [1170.12, subd. (c)(2)(C)(iv)], and since that definition specifically includes designated juvenile adjudications, it appears that a person who has been adjudicated for an offense listed in section 667(d)(3) [1170.12, subd. (b)(3)] will be excluded from the benefits of Proposition 36. While juvenile 'adjudications' and adult 'convictions' are distinguished in many other contexts, for the purposes of the exclusion under section 667(e)(2)(C)(iv) [1170.12, subd. (c)(2)(C)(iv)], they are treated the same." (Couzens et. al., *supra,* § 20:36.)

Even accepting appellant's reading of the statute, however, we disagree with his conclusion. The maxim of statutory construction upon which appellant relies "is not immutable and is inapplicable if its operation would contradict a discernible and contrary legislative intent. (See *California Fed. Savings & Loan Assn. v. City of Los Angeles* (1995) 11 Cal.4th 342, 350–351; *Wildlife Alive v. Chickering* (1976) 18 Cal.3d 190, 195.)" (*People v. Anzalone* (1999) 19 Cal.4th 1074, 1078-1079; see, *Riese v. St. Mary's Hospital & Medical Center* (1987) 209 Cal.App.3d 1303, 1316-1317.)

"Ballot pamphlet arguments have been recognized as a proper extrinsic aid in construing voter initiatives adopted by popular vote." (*Yearwood, supra,* 213 Cal.App.4th at p. 171.) We are aware of nothing in the arguments for or against Proposition 36 bearing directly on whether a prior juvenile adjudication can be used to find an inmate ineligible for resentencing. In general, however, "[t]he ballot arguments supporting Proposition 36 were primarily focused on increasing public safety and saving money. The public safety argument reasoned, 'Today, dangerous criminals are being

15

released early from prison because jails are overcrowded with nonviolent offenders who pose no risk to the public. Prop. 36 prevents dangerous criminals from being released early. People convicted of shoplifting a pair of socks, stealing bread or baby formula don't deserve life sentences.' (Voter Information Guide, Gen. Elec. (Nov. 6, 2012) rebuttal to argument against Prop. 36, p. 53.) Also, 'Prop. 36 will help stop clogging overcrowded prisons with non-violent offenders, so we have room to keep violent felons off the streets' and 'Prop. 36 will keep dangerous criminals off the streets.' (Voter Information Guide, Gen. Elec., *supra,* argument in favor of Prop. 36, p. 52.) The Act's proponents stated that 'Criminal justice experts and law enforcement leaders carefully crafted Prop. 36 so that truly dangerous criminals will receive no benefits whatsoever from the reform.' (*Ibid.*) The fiscal argument reasoned that the Act could save taxpayers '$100 million every year' that would otherwise be spent 'to house and pay health care costs for non-violent three strikes inmates if the law is not changed.' (*Ibid.*)" (*Yearwood,* at p. 171.)

Proposition 36 changed initial sentencing so that an offender with two prior strikes who commits a new crime that is not a serious or violent felony (or one of the offenses described in section 1170.12, subdivision (c)(2)(C)(i)–(c)(2)(C)(iii)) must be sentenced as a *second* striker unless the offender has prior convictions *or juvenile adjudications* for specified offenses. (§ 1170.12, subd. (c)(2)(C)(iv).) In other words, a defendant with a prior juvenile adjudication for one of the specified offenses would not be able to avoid three strikes sentencing even if his or her current offense was not a serious or violent felony. If section 1170.126, subdivision (e)(3), is interpreted as excluding prior juvenile adjudications for purposes of determining eligibility for resentencing, a defendant convicted of a crime that is not a serious or violent felony who, if first sentenced under the Reform Act would be treated as a third striker due to a prior juvenile adjudication, would nevertheless be entitled to have his or her previously imposed three strikes sentence reduced to a second strike sentence. This would make no sense.

A similar point was made in the recently decided *People v. Arias* (2015) 240 Cal.App.4th 161 (*Arias*). The *Arias* court concluded that the fact the Reform Act did not

change the circumstances in which a juvenile adjudication constitutes a "conviction" as set forth in sections 667, subdivision (d)(3), and 1170.12, subdivision (b)(3), demonstrates that the electorate intended "convictions" as used in section 1170.126, subdivision (e)(3), to mean " 'conviction[s]' as defined in sections 667, subdivision (d) and 1170.12, subdivision (b). To hold otherwise would lead to an absurd result: A person whose current conviction was not a serious or violent felony, but who had two prior strike convictions, one of which was a juvenile adjudication for murder, would be disqualified from being *sentenced* as a second strike offender under section 667, subdivision (e)(2)(C)(iv)(IV) and would receive an indeterminate term of 25 years to life pursuant to section 667, subdivision (e)(2)(A)(ii). That same person would *not*, however, be disqualified from having that indeterminate sentence recalled and being *resentenced* as a second strike offender under section 1170.126, subdivision (e)." (*Arias,* at p. 169.)[6]

The resentencing provisions of section 1170.126, in essence, correct the situation created by the previous version of the Three Strikes law by permitting those who would not receive a three strikes sentence under the Reform Act to have their sentences reduced. There is no reason to suspect the proponents of Proposition 36 or the electorate intended to reduce the sentences of three strikes inmates who, if sentenced under the Reform Act, would still receive a three strikes sentence. Indeed, it appears the intent behind the resentencing provisions of the Reform Act was to be more circumspect regarding reducing the sentences of current three strikes inmates than regarding the sentence first imposed upon an offender since passage of the Reform Act. Under section 1170.126, subdivision (f), an inmate serving a three strikes sentence who would otherwise qualify

---

[6] *Arias* rejected the argument that a juvenile adjudication cannot constitute a "conviction" for purposes of section 1170.126 resentencing because Welfare and Institutions Code section 203 precludes juvenile adjudications from being " 'deemed a conviction' 'for any purpose.' " (*Arias, supra,* 240 Cal.App.4th at p. 165.) The court held that Welfare and Institutions Code section 203 is "superseded in the three strikes context" since the provisions of the Three Strikes law "expressly apply notwithstanding any other law (§§ 667, subd. (d), 1170.12, subd. (b)), thus evidencing the Legislature's and electorate's intent that they prevail over all contrary law (see *In re Greg F*. (2012) 55 Cal.4th 393, 406.)" (*Arias*, at pp. 167-168.)

17

for resentencing as a second striker may be denied resentencing if the trial court finds such resentencing "would pose an unreasonable risk of danger to public safety." No such limitation exists with respect to original sentencing: A newly sentenced defendant whose current offense was not a serious or violent felony and who did not have disqualifying prior offenses or juvenile adjudications would be entitled to sentencing as a second striker without regard to any determination of dangerousness. (§ 1170.12, subd. (c)(2)(C).) Reading section 1170.126 as appellant suggests would afford a benefit to inmates seeking resentencing that would not be available to defendants being sentenced under the Reform Act. This result would be contrary to the apparent intent of the voters, as well as the proposition's mandate that "[t]his act is an exercise of the public power of the people of the State of California for the protection of the health, safety, and welfare of the people of the State of California, and shall be liberally construed to effectuate those purposes." (Voter Information Guide, Gen. Elec., *supra,* text of Prop. 36, § 7, p. 110.)

Addressing respondent's argument that the voters, in passing the Reform Act, intended to prevent the release of dangerous "criminals," appellant argues that just as a juvenile adjudication is not a conviction, a child adjudicated to have committed a violent offense is not a criminal. Appellant discusses at length courts' recognition that children are "constitutionally different from adults for purposes of sentencing[,]" and " 'less deserving of the most severe punishments' " due to their "diminished culpability and greater prospects for reform." (*Miller v. Alabama* (2012) ___ U.S. ___, 132 S.Ct. 2455, 2464.) Reasoning that the same considerations make it less appropriate to enhance a sentence due to a juvenile adjudication than due to an adult conviction, appellant urges that the voters omission of "juvenile adjudications" from section 1170.126 indicates a willingness, "[i]n the 'new spirit' of the Three Strikes law, . . . to give inmates with prior juvenile adjudications a break."

We are not persuaded. If the electorate had intent appellant ascribes to it, presumably juvenile adjudications would have been excluded from use as "strikes" in original sentencing under section 1170.12. Again, appellant offers no explanation for treating inmates seeking resentencing more leniently with respect to priors than newly

18

sentenced defendants. The changes to the Three Strikes law made by Proposition 36 address the defendant's (or inmate's) *current* offense: The essential difference from prior law is that a three strikes sentence is now triggered by serious or violent felony convictions, not *any* felony conviction. We find nothing in the ballot arguments concerning Proposition 36 to suggest an intent to alter the effect of a defendant's prior criminal history on sentencing. The only change in that respect was the addition of the focus on dangerousness with respect to resentencing three strike inmates, which, as we have said, makes it *more* difficult for such an inmate to avoid a three strikes sentence than for a defendant newly sentenced under the Reform Act to do so.

### III.

Appellant's final argument concerning the juvenile adjudication is that it was not properly before the court and, therefore, could not be used to find him ineligible for resentencing.

As set forth above, in opposing appellant's petition for resentencing, the prosecutor initially informed the court that appellant would not be eligible for resentencing if his 1975 juvenile adjudication was for forcible rape, and that the juvenile file would be before the court at the hearing for the court to make a determination whether it was in fact for forcible rape. At a hearing on February 25, when the court asked where the juvenile court file was, the prosecutor replied that he had tried to have the file sent to the court and thought it had been, and that the record had been pulled from the archives. The prosecutor indicated that the court might decide the evidence in the file was inconclusive and that he had so far been unsuccessful in obtaining a copy of the transcript from the dispositional hearing.

By the hearing on March 18, 2013, the court had reviewed the juvenile file. After a brief review of the file, defense counsel argued that while a juvenile petition filed when appellant was 16 years old alleged a sexual assault, and documents indicated that appellant was sent to the DJJ for an evaluation, then "returned" and later discharged from the DJJ with no further action taken, there was no sustained petition in the file. The court found it clear there was a sustained petition for forcible rape: "There's no question the

19

defendant was placed at the DJJ in 1975. He was discharged from the [DJJ] in 1978 dishonorably, and committed to the Department of Corrections, and he has a Department of Corrections number that he received at that time. [¶] There are a number of reports in this juvenile file that discuss his counseling that he received in the context of [the] circumstances of the rape allegations so—and the minutes and probation officer's report . . . make reference on page 2 of the report filed April 15th of the sustained petition, and then it goes on to reference the Vallejo Police Department report and discuss all the facts of the alleged rape. Now, this is a report that's being made with respect to the sustained petition."

When defense counsel reiterated that there was not "an actual sustained petition" and suggested that a juvenile could be placed in various programs without having allegations of a petition sustained, the court pointed to the commitment order, which "indicates that the defendant was committed to the [DJJ] for a violation of . . . section 261. That's on the commitment dated April 16th, the day after the dispositional hearing. So I just don't—I don't see that there's any question about what happened." Although the prosecutor indicated there might be some question whether the rape was forcible, the court stated, "Well, there's no question that it was forcible. There's none. All of the versions, and I know there were several versions indicated, that at one point prior to the act the defendant showed this gun to the victim, and that's what the victim claimed. That's what she claimed led to the sexual event and that the court found that it was a violation of 261. There's no question about that. [¶] . . . [¶] Every single report from the [DJJ] thereafter and to the court all refer to his sustaining a petition for forcible rape."

Subsequent to this hearing, on May 13, the prosecutor served the form JV-571 "Notice of Request for Disclosure of Juvenile Case File" on the Solano County Counsel, appellant, the probation department and the Solano County Health and Social Services Agency. The Notice was addressed to the Solano County Public Defender, as well as the above listed parties, but there was no proof of service on the public defender. The proof of service stated, "I was not able to provide notice of this petition to the following

20

because I did not know their names or addresses. . . . [¶] . . . [¶] Attorney of record for the child."

On May 14, the prosecutor filed supplemental points and authorities attaching copies of a 1975 order of commitment to the DJJ for violation of section 261, the juvenile court petition alleging forcible rape, and minute orders sustaining the petition and committing appellant to the DJJ. Appellant's and defense counsel's objections to release of the records were filed on May 16.[7]

At a hearing on June 10, the court noted, to ensure "the record is straight," that it had previously reviewed the juvenile file on its own motion and ordered portions released to the parties, then after the release and some discussion on the record, appellant had objected to the release. Defense counsel argued that Welfare and Institutions Code section 827 required that a determination regarding dissemination of information in the juvenile court file be made by a juvenile court judge and that the trial court therefore lacked jurisdiction to make a determination on release.[8] The prosecutor represented that

---

[7] Defense counsel's objection stated that because the transcripts of the juvenile proceedings had been destroyed, the " 'reports' and records containing unverifiable hearsay of allegations and circumstances in said minor's life gleaned from juvenile records which should have been sealed almost 40 years ago are not subject to verification" and "subject to distortion and misrepresentation," and that due to passage of time, it would not be possible to confront and cross examine witnesses who made allegations contained in the records. Counsel also objected that disclosure would be a "violation of the minor's right to privacy."

In the clerk's transcript, the one-page attachment to form JV-572 in which appellant explained his objections to release ends in mid-sentence, suggesting the existence of an additional page or pages. The gist of appellant's objection appears to be that the prosecutor's airing of his juvenile records in open court in violation of his statutory and constitutional rights had prejudiced him by defaming his character and denying him an opportunity for a fair hearing on his resentencing request. Appellant referred to "highly prejudicial & inflammatory 40-year-old allegations . . . that have never been put before or proven by a jury at trial . . ."

[8] The prosecutor asserted that section 827 allowed the district attorney to review the file, although a court order was required before the information could be disseminated for use in this proceeding. Defense counsel argued that section 827 allowed the

21

after she submitted the request for disclosure for filing in early May, she learned the juvenile court clerk had not filed it.[9]  In trying to determine how to expedite the request, the prosecutor said, the juvenile court judge's judicial assistant told her that "this court could actually sit and make the determination of the appropriateness of the release of the juvenile court file and sign that JV-571 order if the court determines that the contents of that juvenile file are relevant to this proceeding."

The trial court agreed that it had jurisdiction to sign the release order, and ordered that the request for disclosure be filed.  Having considered the request and objections, the court granted the request for disclosure, finding that the prosecutor had shown a legitimate need for the records and the records were substantially relevant to the request for resentencing.  The court ordered the relevant portions of the juvenile court file released to the parties for use in this proceeding.

"It is the express intent of the Legislature 'that juvenile court records, in general, should be confidential.'  ([Welf. & Inst. Code,] § 827, subd. (b).)  The strong public policy of confidentiality of juvenile proceedings and records has long been recognized. (*T.N.G. v. Superior Court* (1971) 4 Cal.3d 767, 778 [(*T.N.G.*)]; *Foster v. Superior Court* (1980) 107 Cal.App.3d 218, 228.) Courts have recognized, however, that this policy of confidentiality is not absolute."  (*In re Keisha T.* (1995) 38 Cal.App.4th 220, 231, fn. omitted.)

Welfare and Institutions Code section 827, subdivision (a)(1), enumerates a list of persons who may inspect a juvenile case file without court order;[10] in addition, a juvenile

---

prosecution to review the juvenile file in certain circumstances but not in the circumstances of this case.

[9] A different prosecutor appeared at this hearing and subsequent ones than the one who originally appeared in the case.

[10] The list is as follows:

"(A)  Court personnel.

"(B)  The district attorney, a city attorney, or city prosecutor authorized to prosecute criminal or juvenile cases under state law.

"(C) The minor who is the subject of the proceeding.

"(D) The minor's parents or guardian.

"(E) The attorneys for the parties, judges, referees, other hearing officers, probation officers, and law enforcement officers who are actively participating in criminal or juvenile proceedings involving the minor.

"(F) The county counsel, city attorney, or any other attorney representing the petitioning agency in a dependency action.

"(G) The superintendent or designee of the school district where the minor is enrolled or attending school.

"(H) Members of the child protective agencies as defined in Section 11165.9 of the Penal Code.

"(I) The State Department of Social Services, to carry out its duties pursuant to Division 9 (commencing with Section 10000), and Part 5 (commencing with Section 7900) of Division 12, of the Family Code to oversee and monitor county child welfare agencies, children in foster care or receiving foster care assistance, and out-of-state placements, Section 10850.4, and paragraph (2).

"(J) Authorized legal staff or special investigators who are peace officers who are employed by, or who are authorized representatives of, the State Department of Social Services, as necessary to the performance of their duties to inspect, license, and investigate community care facilities, and to ensure that the standards of care and services provided in those facilities are adequate and appropriate and to ascertain compliance with the rules and regulations to which the facilities are subject. . . .

"(K) Members of children's multidisciplinary teams, persons, or agencies providing treatment or supervision of the minor.

"(L) A judge, commissioner, or other hearing officer assigned to a family law case with issues concerning custody or visitation, or both, involving the minor, and the following persons, if actively participating in the family law case: a family court mediator assigned to a case involving the minor pursuant to Article 1 (commencing with Section 3160) of Chapter 11 of Part 2 of Division 8 of the Family Code, a court-appointed evaluator or a person conducting a court-connected child custody evaluation, investigation, or assessment pursuant to Section 3111 or 3118 of the Family Code, and counsel appointed for the minor in the family law case pursuant to Section 3150 of the Family Code. . . .

"(M) A court-appointed investigator who is actively participating in a guardianship case involving a minor pursuant to Part 2 (commencing with Section 1500) of Division 4 of the Probate Code and acting within the scope of his or her duties in that case.

case file may be inspected by "[a]ny other person who may be designated by court order of the judge of the juvenile court upon filing a petition." (Welf. & Inst. Code, § 827, subd. (a)(1)(P).) An authorized person may not disclose information from the juvenile file to an unauthorized person without court order. (*Id*., subds. (a)(4), (a)(5); *J.E. v. Superior Court* (2014) 223 Cal.App.4th 1329, 1337.)

Rule 5.552 of the California Rules of Court sets forth the procedure to be followed when a court order is required.[11] The petitioner must serve upon enumerated parties a request for disclosure (form JV-570), a notice of request for disclosure (form JV-571) and a blank copy of the form for objection to release (form JV-572), and if the petitioner shows "good cause," the court "may set a hearing." (Rule 5.552(d)(1), (e)(1), (e)(2).) If the court determines there may be information to which the petitioner is entitled, "the juvenile court judicial officer must conduct an in camera review of the juvenile case file and any objections and assume that all legal claims of privilege are asserted." (Rule 5.552(e)(3).) The court "must balance the interests of the child and other parties to the juvenile court proceedings, the interests of the petitioner, and the interests of the public" (rule 5.552(e)(4)) and, if it grants the petition, "the court must find that the need for discovery outweighs the policy considerations favoring confidentiality of juvenile case files." (Rule 5.552(e)(5).) To obtain disclosure, the petitioner must show by a preponderance of the evidence "that the records requested are necessary and have substantial relevance to the legitimate need of the petitioner." (Rule 5.552(e)(6).) Rule 5.552 specifies that "[t]he confidentiality of juvenile case files is intended to protect the privacy rights of the child." (Rule 5.552(e)(5).)

---

"(N) A local child support agency for the purpose of establishing paternity and establishing and enforcing child support orders.

"(O) Juvenile justice commissions as established under Section 225. . . .

"(P) Any other person who may be designated by court order of the judge of the juvenile court upon filing a petition." (Welf. & Inst. Code, § 827, subd. (a)(1).)

[11] All further references to rules will be to the California Rules of Court.

24

Section 827 of the Welfare and Institutions Code clearly vests control over access to juvenile records in the juvenile court (*In re Elijah S.* (2005) 125 Cal.App.4th 1532, 1549-1550 (*Elijah S.*)) and various courts have referred to the "exclusive jurisdiction" of the juvenile court over juvenile records. (E.g., *id.* at p. 1550; *Keisha T., supra,* 38 Cal.App.4th at p. 231; *Cimarusti v. Superior Court* (2000) 79 Cal.App.4th 799, 803-804 (*Cimarusti*).) Pointing to this "exclusive authority" language, appellant asserts that the trial court's order for release of his juvenile record was void. Without that order, he maintains, there was no evidence he suffered a disqualifying prior "conviction" and, therefore, he should have been found eligible for resentencing. Respondent, by contrast, argues that any departure from the requirements of Welfare and Institutions Code section 827 was merely procedural error that was harmless in light of the relevance of the juvenile adjudication to the resentencing proceeding and the presence of due process safeguards surrounding the juvenile record.

"The term 'jurisdiction' has many meanings: While in its 'most fundamental or strict sense,' it means 'an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties,' the term may also refer to the situation where a court that has jurisdiction over the subject matter and parties 'has no "jurisdiction" (or power) to act except in a particular manner, or to give certain kinds of relief, or to act without the occurrence of certain procedural prerequisites.' (*Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 288.) 'Action "in excess of jurisdiction" by a court that has jurisdiction in the "fundamental sense" (i.e., jurisdiction over the subject matter and the parties) is not void, but only voidable.' (*Conservatorship of O'Connor* (1996) 48 Cal.App.4th 1076, 1088, italics omitted.)" (*People v. Burnett* (1999) 71 Cal.App.4th 151, 178-179.)

Arguing that the order for release of his juvenile file was void and therefore not subject to harmless error analysis, appellant points to *Andrews v. Superior Court of San Joaquin County* (1946) 29 Cal.2d 208 (*Andrews*). *Andrews* held that the "police court" established by a city charter lacked jurisdiction to accept the defendant's guilty plea to a charge of contributing to the delinquency of a minor because the offense was within the

25

exclusive jurisdiction of juvenile court.  (*Id.* at pp. 211-212, 214-215.)  Appellant emphasizes that *Andrews* held the judgment of the police court was void (*id.* at pp. 214-215) rather than finding the error harmless in that the defendant "probably would have pleaded guilty even if he were in a court with jurisdiction."  Appellant's reliance upon *Andrews* assumes that the type of "jurisdiction" involved there—over an offense designated as being within the exclusive jurisdiction of a given court—is equivalent to the sense in which decisions over release of juvenile court records have been held to be within the exclusive jurisdiction of the juvenile court.  The conclusion in *Andrews* that a judgment of conviction entered in the absence of jurisdiction in the fundamental sense is void does not assist in determining whether a different type of court order implicates fundamental jurisdiction.

Appellant views the error here as "structural" under *United States v. Gonzalez-Lopez* (2006) 548 U.S. 140 (*Gonzalez-Lopez*), which held that structural errors are errors that " 'defy analysis by "harmless-error" standards' " (*id.* at p. 148) because of "the difficulty of assessing the effect of the error."  (*Id.* at p. 149, fn. 4.)[12]

The issue in *Gonzalez-Lopez* was the erroneous denial of counsel of choice.  The court explained:  "In *Arizona v. Fulminante* [(1991)] 499 U.S. 279, we divided constitutional errors into two classes.  The first we called 'trial error,' because the errors 'occurred during presentation of the case to the jury' and their effect may 'be quantitatively assessed in the context of other evidence presented in order to determine whether [they were] harmless beyond a reasonable doubt.'  *Id.,* at 307–308 (internal quotation marks omitted).  These include 'most constitutional errors.'  *Id.,* at 306.  The

---

[12] Appellant characterizes the dissent in *Gonzalez-Lopez* as viewing structural errors as "those which are so 'fundamental and pervasive' that they 'can never be harmless.' "  His quotation, however, is actually from *Delaware v. Van Arsdall* (1986) 475 U.S. 673, 681-682 [holding improper restriction on cross examination not subject to per se reversal].  The *Gonzalez-Lopez* dissent argued that improper denial of the right to counsel of choice *is* amenable to harmless error analysis, and that "[a]utomatic reversal is strong medicine that should be reserved for constitutional errors that '*always*' or '*necessarily,*' *Neder v. United States* [(1999) 527 U.S. 1,] 9 produce [fundamental] unfairness."  (*Gonzalez-Lopez, supra,* 548 U.S. at p. 159 (dis. opn. of Alito, J.).)

26

second class of constitutional error we called 'structural defects.' These 'defy analysis by "harmless-error" standards' because they 'affec[t] the framework within which the trial proceeds,' and are not 'simply an error in the trial process itself.' *Id.,* at 309–310. See also *Neder v. United States* [*supra*,] 527 U.S. 1, 7–9. Such errors include the denial of counsel, see *Gideon v. Wainwright* [(1963)] 372 U.S. 335, the denial of the right of self-representation, see *McKaskle v. Wiggins* [(1984)] 465 U.S. 168, 177–178, n. 8, the denial of the right to public trial, see *Waller v. Georgia* [(1984)] 467 U.S. 39, 49, n. 9, and the denial of the right to trial by jury by the giving of a defective reasonable-doubt instruction, see *Sullivan v. Louisiana* [(1993)] 508 U.S. 275.

"We have little trouble concluding that erroneous deprivation of the right to counsel of choice, 'with consequences that are necessarily unquantifiable and indeterminate, unquestionably qualifies as "structural error." ' *Id.,* at 282. Different attorneys will pursue different strategies with regard to investigation and discovery, development of the theory of defense, selection of the jury, presentation of the witnesses, and style of witness examination and jury argument. And the choice of attorney will affect whether and on what terms the defendant cooperates with the prosecution, plea bargains, or decides instead to go to trial. In light of these myriad aspects of representation, the erroneous denial of counsel bears directly on the 'framework within which the trial proceeds,' *Fulminante, supra,* at 310—or indeed on whether it proceeds at all. It is impossible to know what different choices the rejected counsel would have made, and then to quantify the impact of those different choices on the outcome of the proceedings. Many counseled decisions, including those involving plea bargains and cooperation with the government, do not even concern the conduct of the trial at all. Harmless-error analysis in such a context would be a speculative inquiry into what might have occurred in an alternate universe." (*Gonzalez-Lopez*, *supra*, 548 U.S. at pp. 148-150.)

Appellant reasons that the error here—the trial court, rather than the juvenile court, ordering release of information in his juvenile file—is structural because there is no way to determine whether the juvenile court judge would have granted the petition for

27

release of the records, as that judge might have been persuaded by appellant's arguments that the records did not concern a "conviction" or that, because the reporter's transcripts of the juvenile proceedings had been destroyed, the contents of the juvenile records were unreliable and unverifiable hearsay. But the fact that a different judge might have reached a different conclusion on these matters is not what renders a given class of error structural due to the difficulty of assessing its effect. The question whether to release information concerning appellant's juvenile adjudication did not implicate such intangible and fundamental factors as are at issue in the type of errors viewed by *Gonzalez-Lopez* as affecting the " 'framework within which the trial proceeds,' " such as how a different attorney might have advised the defendant or presented the case if the right to counsel of choice had not been denied. (*Gonzalez-Lopez, supra,* 548 U.S. at p. 148.) True, a different judge might have concluded a juvenile adjudication is not a "prior conviction" for purposes of section 1170—but, as our discussion above explains, such a decision would have been erroneous. Decisions on the admissibility of particular records would likewise be subject to review on appeal.[13] The determination whether to release portions of appellant's juvenile records was, essentially, an evidentiary issue—albeit one subject to particular procedural requirements. The trial court may have lacked authority to order release of juvenile court records, but it did not lack fundamental jurisdiction so as to render its order void.

Had the question been presented to the juvenile court, it is all but impossible to imagine that court would not have released the records in question. Given the requirements of section 1170.126, subdivision (e)(3), for eligibility for resentencing, it is obvious that records in appellant's juvenile file concerning the rape adjudication were "necessary" and had "substantial relevance to the legitimate need of the petitioner."

---

[13] Appellant notes in his opening brief on appeal that his attorney made hearsay objections in the trial court, and that the trial court mentioned parts of the juvenile file that were "not strictly speaking part of the record of 'conviction' but hearsay statements by the complaining witness." His briefs do not, however, argue that the trial court's decision that his juvenile adjudication was for forcible rape was erroneous because it was based on hearsay.

(Rule 5.552(e)(6).)  The court ruling on a disclosure request is required to "balance the interest of the child and other parties to the juvenile court proceedings, the interests of the petitioner, and the interests of the public" (rule 5.552(e)(4)); to grant disclosure, the court must find that "the need for discovery outweighs the policy considerations favoring confidentiality of juvenile case files."  (Rule 5.552(e)(5).)  Here, the trial court, the prosecutor, and appellant were entitled to inspect appellant's juvenile file without court order (Welf. & Inst. Code, § 827, subd. (a)(1)(A), (B), (C)); the court obtained appellant's juvenile file on its own motion and was fully aware of the information it contained concerning the prior adjudication.  The primary issue under Welfare and Institutions Code section 827 was whether information in that file could be *used* in the present proceeding, where such use might expose the information to unauthorized others.  "The confidentiality of juvenile case files is intended to protect the privacy rights of the child."  (Rule 5.552(e)(5).)  The prosecutor was seeking to prove a juvenile adjudication that the electorate enacting three strikes reform deemed significant enough to preclude resentencing.  The privacy rights implicated were not those of a child, but of an adult decades past the age of majority, whose past criminal history—including certain juvenile adjudications—was made relevant by the legislation governing the present proceeding.  The public interest, as evidenced by the adoption of section 1170.126, subdivision (e)(3), and the provisions of sections 1170.12, subdivision (d), and 667, subdivision (b), clearly militates in favor of release.  Appellant has suggested no policy that would support finding his privacy interest in his juvenile adjudication outweighed the prosecutor's need to present the information in court.

To the contrary, the considerations supporting the "strong public policy of confidentiality of juvenile records" that Welfare and Institutions Code section 827 is meant to protect (*J.E. v. Superior Court, supra,* 223 Cal.App.4th at p. 1337) are not implicated here.  The California Supreme Court has observed that section 827, along with other statutory provisions, "reflect[s] a legislative judgment that rehabilitation through the process of the juvenile court is best served by the preservation of a confidential atmosphere in all of its activities."  (*T.N.G., supra,* 4 Cal.3d at p. 776.)  Accordingly, the

29

juvenile court is vested with "exclusive authority to determine the extent to which juvenile records may be released to third parties" because the "juvenile court must be in a position to effect the appropriate treatment for each individual juvenile" and "if prospective employers and sometimes third parties may obtain information as to juvenile records without the permission of the juvenile court and may use these records to deny opportunities to young persons, the rehabilitative efforts of the juvenile court will often be thwarted." (*Id.* at p. 778.)[14]  Similarly, with respect to the juvenile dependency system, "[s]ince the Legislature has entrusted the juvenile court with the responsibility for the care and protection of such children in accordance with the best interests of the minors and the public (Welf. & Inst. Code, § 202), it is appropriate that the Legislature has also given the juvenile court the authority to resolve" conflict between the public interest in scrutiny of the system and the confidentiality of the children involved.  (*Keisha T., supra,* 38 Cal.App.4th at pp. 225-226.)[15]  The statutory scheme established in section 827 "reflect[s] a determination by the Legislature that the juvenile court has both the ' "sensitivity and expertise" to make decisions about access to juvenile records.' " (*People v. Superior Court* (2003) 107 Cal.App.4th 488, 491.)  In the present case, because the records at issue are appellant's own and appellant is not a minor in need of the juvenile court's protection, the need for the special sensitivity and expertise of the juvenile court is highly attenuated.

---

[14] In *T.N.G.*, minors who had been detained but released without any formal charges being filed sought to have their records sealed without having to abide by the waiting period for such sealing under Welfare and Institutions Code section 781 (age of majority, or five years from termination of juvenile court jurisdiction), primarily to escape the obligation of disclosing the detention on applications for college, employment or military service.  (*T.N.G., supra,* 4 Cal.3d at pp. 771-772, 774.)  The court found sealing unnecessary because of the "provision, and legislative policy of confidentiality, of the Juvenile Court Law."  (*Id.* at p. 775.)

[15] *Keisha T.*, *supra,* 38 Cal.App.4th at page 226, involved a newspaper's petition to inspect juvenile court records for a story on the county's ability or inability to protect abused and neglected children, a request the court viewed as pitting the public interest in scrutiny of the juvenile welfare system against the confidentiality of "society's most vulnerable members."  (*Ibid*.)

Appellant cites numerous cases reiterating in various contexts the policy of confidentiality of juvenile records and authority of the juvenile court to determine whether access to those records should be permitted. (*J.E. v. Superior Court, supra,* 223 Cal.App.4th at p. 1337; *In re Gina S.* (2005) 133 Cal.App.4th 1074, 1081-1082; *People v. Superior Court, supra,* 107 Cal.App.4th at pp. 492-493; *In re Anthony H.* (2005) 129 Cal.App.4th 495, 502; *Elijah S., supra,* 125 Cal.App.4th at p. 1541; *Pack v. Kings County Human Services Agency* (2001) 89 Cal.App.4th 821, 827; *Cimarusti, supra,* 79 Cal.App.4th at pp. 803-804; *In re R.G.* (2000) 79 Cal.App.4th 1408, 1414-1415; *In re Tiffany G.* (1994) 29 Cal.App.4th 443, 447, 451; *In re Michael B.* (1992) 8 Cal.App.4th 1698, 1705-1706; *Lorenza P. v. Superior Court* (1988) 197 Cal.App.3d 607, 610-611; *Navajo Express v. Superior Court* (1986) 186 Cal.App.3d 981, 984-985; *In re Maria V.* (1985) 167 Cal.App.3d 1099, 1102-1103; *Wescott v. County of Yuba* (1980) 104 Cal.App.3d 103, 107-108).

Most of these cases concern requests for disclosure that were in fact made to the juvenile court. (*J.E. v. Superior Court, supra,* 223 Cal.App.4th at pp. 1333-1334 [juvenile court erred in denying request for in camera review of juvenile records of prosecution witness on ground that request for exculpatory information should be addressed to prosecution]; *In re Gina S., supra,* 133 Cal.App.4th at pp. 1082, 1085 [mother of dependent child entitled to inspect but not copy or disseminate documents in file without court order]; *In re Anthony H., supra,* 129 Cal.App.4th at p. 502 [juvenile court erred in delegating to federal court judge determination whether documents sought from juvenile file were relevant to federal action]; *People v. Superior Court, supra,* 107 Cal.App.4th at pp. 490-491 [affirming juvenile court's denial of grand jury request to inspect records in dependency case without explaining nature of investigation and relevance of records sought]; *Elijah S., supra,*125 Cal.App.4th at pp. 1538-1539 [newspapers sought disclosure of child welfare agency records for two deceased minors who had not been subjects of formal dependency petitions]; *Pack v. Kings County Human Services Agency, supra,* 89 Cal.App.4th at p. 825 [newspapers requested access to records of child who died in foster care]; *In re R.G., supra,* 79 Cal.App.4th at p. 1410,

1418 [affirming juvenile court order allowing school district to disseminate to commission on teacher credentialing information from juvenile file concerning teacher's sexual abuse of his minor daughters]; *In re Tiffany G., supra,* 29 Cal.App.4th at pp. 447, 451 [juvenile court order prohibiting mother and stepfather of children removed from custody from disseminating confidential materials generated during dependency process within court's authority and necessary to avoid undermining court's "efforts to protect the children and promote their best interests"]; *In re Michael B., supra,* 8 Cal.App.4th at pp. 1701, 1703, 1705-1707 [in terminating dependency jurisdiction, juvenile court ordered on own motion that juvenile court records would be admissible in family law court if either parent sought modification of custody order]; *In re Maria V., supra,* 167 Cal.App.3d at pp. 1101-1103 [upholding authority of juvenile court, in proceeding to terminate mother's parental rights, to limit mother's attorney's access to mother's brother's juvenile delinquency file to information court deemed relevant to placement issue]; *Navajo Express v. Superior Court, supra,* 186 Cal.App.3d at pp. 984-986 [juvenile court had authority to review juvenile records of personal injury plaintiff, sought by defendants attempting to show that the brain injury claimed to have resulted from accident was present when plaintiff was a juvenile, and determine whether need for discovery outweighed "policy considerations favoring confidentiality of juvenile records"].)

Other cases affirm trial courts' refusal to decide requests for access to juvenile files that should have been directed to the juvenile court. In *Cimarusti, supra,* 79 Cal.App.4th 799, youth correctional officers dismissed for engaging in or failing to stop or report the use of unauthorized physical force against wards sought discovery of information including the wards' juvenile court records. The trial court correctly held that it did not have authority to grant a petition to compel discovery; the information had to be sought by a petition to the juvenile court under Welfare and Institutions Code section 827. (*Cimarusti*, at pp. 803, 805.) *Cimarusti* remanded the matter to the trial court with directions to assign the petition for discovery to a juvenile court judge for examination of the files and balancing of the wards' interest in confidentiality against the officers' need for disclosure. (*Id*. at pp. 805-806.)

In *Wescott v. County of Yuba, supra,* 104 Cal.App.3d at page 104, the parent of one of several juveniles involved in a shooting incident sought discovery of the entire record in a civil proceeding against one or more of the other juveniles. The trial court ordered the sheriff's department to release the records; the sheriff refused to do so without a juvenile court order. (*Id.* at p. 105.) Reversing, *Wescott* held that although the mother would be entitled to the report under Welfare and Institutions Code section 827 if it concerned only her child, because she intended to use the report of other minors' activities in litigation which could expose the report's contents to the public, she was required to petition the juvenile court for release. (*Wescott,* at pp. 108-110.)

Similarly, *Lorenza P., supra,* 197 Cal.App.3d at page 611, held that a mother accused of murdering her five-month-old daughter could not obtain information from the files of Child Protective Services by subpoena but only by a petition to the juvenile court under Welfare and Institutions Code section 827. *In re Anthony H., supra,* 129 Cal.App.4th at page 502, held that a juvenile court judge's delegation of authority to decide a disclosure request to a federal court violated Welfare and Institutions Code section 827.

None of these cases consider what consequence should follow when a trial court *does* decide a request for disclosure of information in a juvenile court file. For the reasons discussed above, at least in the circumstances of the present case, we cannot accept appellant's characterization of the court's order as void and not subject to harmless error review.

Appellant argues that because there had been no determination and order from the juvenile court regarding disclosure, the prosecutor's attachment of documents pertaining to the juvenile adjudication to its supplemental points and authorities was "illegal" and the trial court's order could not cure this "illegality." If an inference of nefarious purpose was intended by this description, it is not warranted. According to the prosecutor's representations to the trial court, she submitted the request for release to be filed in juvenile court, then later learned the clerk had not filed it and was advised by the juvenile court judge's assistant that the trial court could sign the order if it found the information

33

relevant to the present proceeding. The trial court undertook the function a juvenile court judge would have performed if the request had been presented in juvenile court, requiring the prosecutor to demonstrate the necessity for release of the information, entertaining appellant's objections to release, and concluding the information was substantially relevant to the resentencing proceeding. No legitimate rationale supports appellant's effort to avoid the consequence of his juvenile adjudication by exploiting the fortuity of the procedural missteps that occurred here.

## CONCLUSION AND DISPOSITION

The trial court properly found appellant ineligible for resentencing due to his juvenile adjudication for forcible rape. In light of this conclusion, it is unnecessary for us to address appellant's arguments concerning the trial court's finding that resentencing appellant would pose an unreasonable risk of danger to public safety.[16]

The judgment is affirmed.

---

[16] In seeking reversal of the denial of his resentencing petition, appellant requested that the case be remanded for a new hearing before a different judge. Appellant pointed to statements by the trial judge suggesting the judge "started out with a grudge against appellant or a misapprehension relating to him" based on the judge's recollection of the original trial. Just before oral argument, appellant filed a request for this court to take judicial notice of records in the appeal from appellant's conviction which, he maintains, demonstrate that the facts do not support the judge's recollection. Appellant's concern is with the bearing of the trial court's view of him on its determination whether he would pose an unreasonable risk of danger to public safety if released from prison. As we have affirmed the trial court's denial of the resentencing petition on grounds of ineligibility, the issue of dangerousness is not relevant. The request for judicial notice is denied.

_____

Kline, P.J.

We concur:


_____

Stewart, J.


_____

Miller, J.


*People v. Thurston* (A139587)

35

Trial Court:                                           Solano County Superior Court

Trial Judge:                                     Hon. Peter B. Foor

Attorney for Defendant and Appellant:   William Richard Such
Under Appointment by the
Court of Appeal

Attorneys for Plaintiff and Respondent:   Kamala D. Harris
Attorney General of California

Gerald A. Engler
Chief Assistant Attorney General

Rene A. Chacon
Supervising Deputy Attorney General

Julia Y. Je
Deputy Attorney General