Filed 7/12/17

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sierra)

----

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | C078874 |
| v. | (Super. Ct. No. CR02153X) |
| BOBBY GENE CAROTHERS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Sierra County, John P. Kennelly, Judge.  Reversed with directions.

THREE STRIKES PROJECT, Stanford Law School, and Michael S. Romano, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Michael P. Farrell, Assistant Attorneys General, Julie A. Hokans and Ryan B. McCarroll, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Bobby Gene Carothers, currently serving a prison term of 25 years to life imposed in 2008 under the three strikes law, appeals from the denial of his petition for resentencing under Proposition 36, the Three Strikes Reform Act of 2012 (as

1

approved by voters, Gen. Elec. (Nov. 6, 2012) (the Act)). He contends the trial court erred in finding he was not eligible for resentencing because he was convicted of murder in Texas in 1978. Under the Act, a prior conviction for a number of enumerated offenses, including "[a]ny homicide offense, including any attempted homicide offense, defined in Sections 187 to 191.5" of the Penal Code, renders an inmate ineligible for resentencing.[1] (§§ 667, subd. (e)(2)(C)(iv)(IV), 1170.126, subd. (e)(3).) Defendant's argument is two-fold: (1) only prior California convictions can render an inmate ineligible for resentencing under the Act; and (2) even if a prior out-of-state conviction can render an inmate ineligible for resentencing, the record of defendant's Texas murder conviction does not necessarily show he committed a murder as that crime is defined under California law.

We conclude a prior out-of-state conviction will render an inmate ineligible for resentencing under the Act if the crime committed in the other state would have disqualified the inmate had that crime been committed in California. However, because the crime defendant was convicted of committing in Texas might not have been a murder here in California, an enumerated disqualifying offense, the trial court incorrectly concluded he was ineligible for resentencing. We shall therefore reverse the order denying defendant's petition for resentencing and remand the matter to the trial court for a determination as to whether or not resentencing him would pose an unreasonable risk of danger to public safety.

BACKGROUND

In 2008, defendant entered a plea of no contest to one count of unlawfully taking or driving a vehicle (Veh. Code, § 10851, subd. (a)) and admitted having two prior strike convictions, a 1975 robbery conviction in California (§ 211) and a 1978 murder

---

[1]     Undesignated statutory references are to the Penal Code.

2

conviction in Texas (Tex. Pen. Code, § 19.02, subd. (b)(2)).  He was sentenced to state prison to serve an indeterminate term of 25 years to life.

The facts of the current offense and prior robbery are not relevant to this appeal.  The facts of the prior murder, as revealed in the record of conviction, are that defendant killed the victim by stabbing him with a knife and hitting him on the head with a blunt object, conduct that was found by a Texas jury to be "clearly dangerous to human life" and done with the "inten[t] to cause serious bodily injury."

In November 2012, California voters approved Proposition 36.  "The Act changes the requirements for sentencing a third strike offender to an indeterminate term of 25 years to life imprisonment" (§§ 667, 1170.12) and "also created a postconviction release proceeding whereby a prisoner who is serving an indeterminate life sentence imposed pursuant to the three strikes law for a crime that is not a serious or violent felony *and who is not disqualified*, may have his or her sentence recalled and be sentenced as a second strike offender unless the court determines that resentencing would pose an unreasonable risk of danger to public safety.  (§ 1170.126.)"  (*People v. Yearwood* (2013) 213 Cal.App.4th 161, 167-168, italics added.)

In November 2014, defendant filed a petition to recall his sentence and for resentencing under section 1170.126.  The prosecution opposed the petition.  Acknowledging defendant's commitment offense was not a serious or violent felony, the prosecution argued defendant was nevertheless ineligible for resentencing under section 1170.126, subdivision (e)(3), which provides that "[a]n inmate is not eligible for resentencing if he or she has a prior conviction for any offense appearing in section 667, subdivision (e)(2)(C)(iv), or section 1170.12, subdivision (c)(2)(C)(iv)."  (*People v. Thurston* (2016) 244 Cal.App.4th 644, 655-656, italics omitted.)  Among the enumerated offenses is "[a]ny homicide offense, including any attempted homicide offense, defined in Sections 187 to 191.5, inclusive."  (§ 667, subd. (e)(2)(C)(iv)(IV).)  The prosecution

3

argued defendant's Texas murder conviction therefore disqualified him from being resentenced under the Act.

In reply, defendant argued (1) the plain language of section 667, subdivision (e)(2)(C)(iv)(IV), is "limit[ed] to murders defined by the California Penal Code" and therefore "does not contemplate convictions from other states," and (2) even if out-of-state convictions can be disqualifying, "the specific Texas statute under which [defendant] was convicted . . . is equivalent to California's manslaughter statute" and manslaughter is not a disqualifying offense.

At the hearing on the petition, responding to the prosecution's argument that the Texas record of conviction established the crime committed in that state, i.e., "stabbing a victim, and hitting him on the head with a blunt object," was the functional equivalent of a California implied malice murder, defendant's attorney argued: "The records that we have from Texas don't tell us anything about the nature of the conviction. They tell us essentially two facts, which are contained within the indictment and the jury instructions. And that is that there was one stab wound and that there was a hit with a blunt object, according to the instructions. [¶] We don't know anything further about the facts. We don't know how many stab wounds. We don't know how many times he was hit or with what instrument or what the instrument consisted of, or what the victim's actions were or what [defendant's] actions were." Because the facts were not established in the record of conviction, defendant's attorney argued, the trial court should compare the California and Texas murder statutes and conclude the crime defendant committed in Texas was not necessarily a murder under California law because the statutes require different mental states.

After taking the matter under submission, the trial court concluded defendant's Texas murder conviction disqualified him from being resentenced under the Act and denied the petition.

4

## DISCUSSION

## I

### *A Prior Out-of-state Conviction May Render an Inmate Ineligible for Resentencing*

Defendant argues he is eligible to be resentenced under section 1170.126 "because the statute does not consider convictions from foreign jurisdictions as disqualifying offenses." He is mistaken.

Section 1170.126, subdivision (e)(3), provides that "an inmate is not eligible for resentencing if he or she has a prior conviction for any offense appearing in section 667, subdivision (e)(2)(C)(iv), or section 1170.12, subdivision (c)(2)(C)(iv)." (*People v. Thurston*, *supra*, 244 Cal.App.4th at pp. 655-656, italics omitted.) Both section 667, subdivision (e)(2)(C)(iv), and section 1170.12, subdivision (c)(2)(C)(iv), set forth a list of particularly egregious serious and/or violent felonies, commonly referred to as "super strikes." (Couzens et al., Sentencing Cal. Crimes (The Rutter Group 2016) § 20:63, p. 20-155.) Among the enumerated offenses is "[a]ny homicide offense, including any attempted homicide offense, defined in Sections 187 to 191.5, inclusive." (§§ 667, subd. (e)(2)(C)(iv)(IV), 1170.12, subd. (c)(2)(C)(iv)(IV).)

Each of those provisions (§§ 667, subd. (e)(2)(C)(iv), 1170.12, subd. (c)(2)(C)(iv)) specifically refers to that section's definition of "prior serious and/or violent conviction for a felony." (§ 1170.12, subd. (b).) Under that definition, "[a] prior conviction in another jurisdiction for an offense that, if committed in California, is punishable by imprisonment in the state prison shall constitute a prior conviction of a particular serious and/or violent felony if the prior conviction in the other jurisdiction is for an offense that includes all of the elements of a particular violent felony as defined in subdivision (c) of Section 667.5 or serious felony as defined in subdivision (c) of Section 1192.7." (§§ 667, subd. (d)(2), 1170.12, subd. (b)(2).)

Read together, the meaning of these provisions is clear and unambiguous. An inmate is not eligible for resentencing under section 1170.126 if he or she has a prior out-

of-state conviction for an offense that, if committed in California, includes all of the elements of any of the super strike offenses appearing in section 667, subdivision (e)(2)(C)(iv), or section 1170.12, subdivision (c)(2)(C)(iv).

Nevertheless, defendant relies on our decision in *People v. Hunt* (1999) 74 Cal.App.4th 939 in arguing only prior California convictions can disqualify an inmate from being resentenced under the Act. Such reliance is misplaced. In *Hunt*, we held a court-martial conviction in Germany for indecent acts with a child did not qualify as a conviction of a "sexually violent offense" within the meaning of the Sexually Violent Predators Act (SVPA). We concluded the statutory definition of "sexually violent offense," set forth in Welfare and Institutions Code section 6600 that included " 'a conviction in another state' for an offense that has all the elements of an offense described in subdivision (b)" of that section, "does not encompass a conviction via military court-martial in Germany." (*Hunt*, *supra*, 74 Cal.App.4th at pp. 941-942.) As we explained, "we may not construe 'another state' as used in [Welfare and Institutions Code] section 6600 to encompass the more expansive term 'another jurisdiction.' Had the Legislature intended the application of the [SVPA] to have a broader reach, it could have utilized language similar to . . . section 668 regarding the use of prior convictions to enhance punishment for new offenses." (*Id*. at p. 948.)[2]

---

[2]    Section 668 provides: "Every person who has been convicted in any other state, government, country, or jurisdiction of an offense for which, if committed within this state, that person could have been punished under the laws of this state by imprisonment in the state prison, is punishable for any subsequent crime committed within this state in the manner prescribed by law and to the same extent as if that prior conviction had taken place in a court of this state. The application of this section includes, but is not limited to, all statutes that provide for an enhancement or a term of imprisonment based on a prior conviction or a prior prison term or a term pursuant to subdivision (h) of Section 1170."

6

Here, as already explained, section 1170.126, subdivision (e)(3),'s disqualification of inmates with a prior super strike conviction specifically incorporates sections 667, subdivision (e)(2)(C)(iv), and 1170.12, subdivision (c)(2)(C)(iv).  These provisions, in turn, specifically incorporate those sections' definition of "prior serious and/or violent felony conviction" that includes convictions in "another jurisdiction."  (§§ 667, subd. (d)(2), 1170.12, subd. (b)(2).)  Thus, in enacting Proposition 36, the voters approved the use of the more expansive term the Legislature declined to use in drafting the SVPA.

Thus, we must determine whether defendant's 1978 Texas murder conviction, if committed in California, includes all of the elements of a super strike offense appearing in section 667, subdivision (e)(2)(C)(iv), or section 1170.12, subdivision (c)(2)(C)(iv). We turn to that analysis now.

## II

### *Defendant's 1978 Texas Murder Conviction is Not Necessarily a Disqualifying Offense*

Defendant argues his Texas murder conviction "is most analogous to a manslaughter conviction in California" and therefore is not a disqualifying offense under the Act.  While we disagree with this characterization, we conclude the record of defendant's 1978 Texas murder conviction does not support the trial court's finding of ineligibility.

Again, among the enumerated super strike offenses is "[a]ny homicide offense, including any attempted homicide offense, defined in Sections 187 to 191.5, inclusive." (§ 667, subd. (e)(2)(C)(iv)(IV).)  Thus, a prior conviction for voluntary, involuntary, or vehicular manslaughter defined in section 192 will not render an inmate ineligible for resentencing under the Act.  (Couzens et al., *supra*, § 20:63, p. 20-145.)

Defendant was convicted of violating section 19.02, subdivision (b)(2) (former subdivision (a)(2); Acts 1973, p. 1123, 63d Leg; ch. 426, art. 2, § 1), of the Texas Penal Code.  Under this provision, a defendant commits murder if he or she "intends to cause

7

serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual." As the Texas Court of Criminal Appeals has explained, a conviction of this offense requires proof that "the individual, acting with the conscious objective or desire to create a substantial risk of death, serious permanent disfigurement, or protracted loss or impairment of any bodily member or organ, caused the death of an individual." (*Lugo-Lugo v. State* (Tex. Crim. App. 1983) 650 S.W.2d 72, 81.) The prosecution is also required to prove that "the act intended to cause serious bodily injury [was] objectively clearly dangerous to human life." (*Ibid.*, italics omitted.) This form of murder under Texas law is distinct from intentional murder under section 19.02, subdivision (b)(1) (former subdivision (a)(1); Acts 1973, p. 1123, 63d Leg; ch. 426, art. 2, § 1), that requires proof the defendant intentionally or knowingly caused the death of an individual. Thus, a defendant who intends to kill and does so is guilty of murder under subdivision (b)(1) of the Texas murder statute; where he or she intends only to cause serious bodily injury and the victim dies, the defendant's actions must have been clearly dangerous to human life, measured by an objective standard, in order for murder liability to attach under subdivision (b)(2). (*Lugo-Lugo, supra,* at p. 81.)

Contrary to defendant's argument on appeal, this latter form of murder under Texas law is not "equivalent to involuntary manslaughter" under California law. Instead, we conclude it is most analogous to implied malice murder under California law. In California, murder is defined as "the unlawful killing of a human being . . . with malice aforethought." (§ 187, subd. (a).) "Such malice may be express or implied." (§ 188.) Express malice "requires an intent to kill that is 'unlawful' because . . . ' "there is no justification, excuse, or mitigation for the killing recognized by the law." ' [Citation.] [¶] Malice is implied when an unlawful killing results from a willful act, the natural and probable consequences of which are dangerous to human life, performed with conscious disregard for that danger." (*People v. Elmore* (2014) 59 Cal.4th 121, 133, italics omitted.)

8

However, while the crimes are analogous, defendant is correct they are not identical. Under Texas law, as long as the act that causes death was done with intent to cause serious bodily injury and was *objectively* clearly dangerous to human life, murder liability attaches. In California, the act that causes death need not have been done with intent to cause serious bodily injury, but it must be "conduct that endangers the life of another" and the defendant must have *subjective* awareness of the risk of death. (*People v. Knoller* (2007) 41 Cal.4th 139, 143.) Here, the Texas jury found defendant stabbed the victim and hit him in the head with a blunt object intending to cause him serious bodily injury. The jury also found these actions were objectively and clearly dangerous to human life. The jury was not called upon to determine whether defendant was subjectively aware of that danger.

The question for us, however, is not whether the Texas jury found each element of a California implied malice murder was satisfied, but whether the crime revealed by the record of conviction, if committed in California, would have been a murder under our Penal Code. The record of conviction is too sparse for us to answer that question in the affirmative. All we know is defendant stabbed the victim and hit him in the head with a blunt object. We do not know where the victim was stabbed or how many times. We do not know how many times the victim was hit in the head with the blunt object or what that object was. Nor do we know any of the surrounding circumstances. We do know the Texas jury found defendant intended to cause serious bodily injury, which under Texas law means the "conscious objective or desire to create a substantial risk of death, serious permanent disfigurement, or protracted loss or impairment of any bodily member or organ." (*Lugo-Lugo v. State*, *supra*, 650 S.W.2d at p. 81.) If defendant intended to create a substantial risk of death, then he was obviously subjectively aware of the risk of death and the crime would have been murder here in California as well. But the same conclusion does not flow inexorably from the other two forms of intent to cause serious bodily injury, i.e., intent to permanently disfigure or intent to cause protracted

9

impairment of a body part or organ. It is possible, even if unlikely, defendant intended to inflict such injury but was not subjectively aware of the risk of death. And while the Texas jury also found these actions were *objectively* and *clearly* dangerous to human life, depending on the circumstances surrounding the attack, which are not revealed by the record of conviction, it is possible defendant did not *subjectively* register the danger. Again, in California, such subjective awareness is required for implied malice murder. In Texas, it is not.

Nevertheless, the Attorney General argues that because our murder statute uses "common-law terminology to define the crime of murder," and because "[t]he common law of England recognized that 'one who intended to do serious bodily injury short of death, but who actually succeeded in killing, was guilty of murder in spite of his [or her] lack of an intent to kill, in the absence of circumstances which mitigated the offense to voluntary manslaughter or which justified or excused it' " so too does this form of second degree murder exist in California. In support of this assertion, the Attorney General cites Witkin and Epstein for the proposition that "[a]n intent to inflict serious injury is sufficient to establish malice aforethought ('an abandoned and malignant heart')." (1 Witkin and Epstein, Cal. Criminal Law (4th ed. 2012) § 189, p. 1003.) In addition to citing Wharton's treatise on Criminal Law (2 Wharton's Crim. Law (15th ed. 2015) §§ 139, 140), Witkin and Epstein cite four decisions from the Second Appellate District, each upholding murder convictions where severe child abuse resulted in the death of the child. (See *People v. Aeschlimann* (1972) 28 Cal.App.3d 460 (*Aeschlimann*); *People v. Weisberg* (1968) 265 Cal.App.2d 476 (*Weisberg*); *People v. Lint* (1960) 182 Cal.App.2d 402 (*Lint*); *People v. Murillo* (1931) 119 Cal.App. 59 (*Murillo*).)

In *Aeschlimann*, *supra*, 28 Cal.App.3d 460, the jury convicted the defendants of first degree murder by torture, but the trial court reduced the convictions to second degree murder. (*Id*. at p. 464.) After rejecting the defendants' argument that the evidence was insufficient to support instructing the jury as to first degree murder by torture (*id*. at p.

10

469), the court held the same evidence, i.e., that "both defendants engaged in a course of conduct of inflicting grievous pain and suffering upon the child," was also sufficient to support their convictions for second degree murder.  (*Id*. at p. 475.)  This is not the same as holding an intent to cause serious bodily injury *alone* is sufficient to establish malice aforethought.

In *Weisberg*, *supra*, 265 Cal.App.2d 476, a case also cited by the Attorney General, the court relied on a previous edition of the same treatise for the proposition that malice will exist " 'where the intent is only to cause serious injury,' " and held evidence the deceased 7-week-old child suffered broken ribs, skull fractures, and a fractured leg was sufficient to establish the defendant "at least acted with intent to inflict serious injury." (*Id*. at pp. 480-481.)  In *Lint*, *supra*, 182 Cal.App.2d 402, the court held evidence the defendant severely beat and choked the four-year-old victim, "coupled with the showing of defendant's propensity to torment the victim on several occasions," was sufficient to support his second degree murder conviction.  (*Id*. at p. 412.)  Similarly, in *Murillo*, *supra*, 119 Cal.App. 59, the court held evidence the defendant repeatedly beat the two-year-old victim, "sometimes using her fists and at other times a stick, and on one occasion a bottle," and also stated she hated the child and wanted to see her dead, was sufficient to support her second degree murder conviction.  (*Id*. at pp. 60, 63-64.)  No assertion was made in either *Lint* or *Murillo* that an intent to cause serious injury would alone suffice to establish malice aforethought.

Thus, the only case cited by the treatise supportive of the Attorney General's position is *Weisberg, supra*, 265 Cal.App.2d 476, which itself cites the treatise for the challenged proposition.  The Attorney General also cites an 1861 decision from our Supreme Court, *People v. Bealoba* (1861) 17 Cal. 389.  That case supports the Attorney General's premise, i.e., that "[i]n England, if death ensues from any unlawful act of violence, the slayer, although there existed no intention to kill, but only to do bodily harm, is guilty of murder." (*Id*. at p. 395.)  The court also stated that under our murder

statute, except those murders defined to be of the first degree, "all other homicide which was murder at common law is now murder in the second degree." (*Id*. at p. 398.) However, these comments were made in connection with the court's rejection of the defendant's specific argument that in order for a murder to be of the first degree, that murder must not only be deliberate, willful and premeditated, but must also be similar to the specific kinds of murders listed in the statute, e.g., perpetrated by means of poison, lying in wait, or torture. (*Id*. at pp. 393-394.) The court was not called upon to determine whether an intent to do bodily harm will alone suffice to establish malice aforethought under California law. And as our Supreme Court has repeatedly warned, its opinions are not authority for propositions not under consideration in an individual case. (*Nolan v. City of Anaheim* (2004) 33 Cal.4th 335, 343; *Hadberg v. California Federal Bank FSB* (2004) 32 Cal.4th 350, 374.)

In light of the myriad of times our Supreme Court has defined implied malice murder to require a showing the unlawful killing resulted from a willful act, the natural and probable consequences of which are dangerous to human life, and the defendant consciously disregarded that danger (see, e.g., *People v. Knoller*, *supra*, 41 Cal.4th at pp. 151-152 ["implied malice requires a defendant's awareness of the risk of death to another"] and cases cited therein), we decline to hold, based on the scant authority provided by the Attorney General, an intent to inflict great bodily injury, regardless of whether or not the defendant was subjectively aware of the risk of death, will suffice to establish malice aforethought.

Because the record of the 1978 Texas murder does not establish each element of a California murder, we must conclude the trial court incorrectly determined this prior conviction disqualified defendant from being resentenced under the Act.

## DISPOSITION

The order denying defendant's petition for resentencing under Proposition 36 is reversed and the matter is remanded to the trial court for a determination as to whether or not resentencing defendant would pose an unreasonable risk of danger to public safety.


/s/
HOCH, J.


We concur:


/s/
RAYE, P. J.


/s/
MAURO, J.


13